Edward A. Kerbs and George J. Haney,
Plaintiffs Below, Appellants,

*vs.*

California Eastern Airways, Inc., a Delaware corporation.
Defendant Below, Appellee.

*Supreme Court, On Appeal, July 17, 1952.*

Wolcott and Tunnell, Justices, and Layton, Judge, sitting.

*Arthur G. Logan* and *Stephen E. Hamilton, Jr.*, of Logan, Marvel and Boggs, for appellant.

*David F. Anderson*, of Berl, Potter & Anderson, and *Walter R. Barry, James E. Hughes* and *George F. Mason, Jr.*, of Coudert Brothers, New York City, for appellee.

Wolcott, Justice, delivering the opinion of the court:

This is an appeal from the denial after final hearing of an application by the appellants (hereinafter called plaintiffs) to enjoin the appellee corporation (hereinafter called defendant) from putting into effect a stock option plan and a profit-sharing plan. The plaintiffs are stockholders of the defendant.

The defendant, a Delaware corporation, is engaged in the business of owning, operating and leasing aircraft. From the time of its incorporation in 1946, the defendant lost money in its operations until by the end of 1947 it was in a precarious financial position, having lost over $726,000. In December, 1947, Mr. de Saint-Phalle, the present chairman of the board, accepted the office of president. He made substantial changes in the business and operations of the defendant but, in May of 1948, on his recommendation, the defendant petitioned the United States District Court of Delaware for an order under *Chapter* XI *of the Bankruptcy Act*, 11 *U.S.C.A.* § 701,

*et seq.*, and was allowed by the court to continue in possession of its property. Immediately thereafter, under the direction of Mr. de Saint-Phalle, the defendant dismissed 85% of its personnel, stopped operating its aircraft, leased them to other concerns, and converted its aircraft from freight to passenger carriers. By September of 1948, the defendant's operations had become profitable. In 1949, the defendant's net profits amounted to $212,435 and in the summer of that year it made a substantial payment to creditors.

In May of 1949, a plan of arrangement with creditors, having been approved by the District Court, Mr. de Saint-Phalle persuaded Messrs. Solomon, Grace and Robinson to become directors of the defendant. They were elected in August, 1949 and, thereafter, Mr. Solomon became president of the defendant.

In the first part of 1950, the aircraft of the defendant were improved so as to make them capable of overseas flights in contemplation of their use in passenger service to Rome for the Holy Year celebration. Meanwhile, however, the Korean War broke out and the defendant obtained contracts with the United States for the use of some of its planes in the Tokyo airlift. This operation was extremely profitable and defendant was able to pay all its creditors in full. In December, 1950, the defendant was discharged from the *Chapter* XI proceedings. Its net profits for 1950 were $244,163.58.

In September, 1949, the new board of directors met and appointed a committee of three to make salary recommendations to the board. This report was submitted by disinterested directors to the board at a meeting on December 16, 1949 recommending that certain salaries be allowed, but stating that additional compensation in another form would be the subject of a further report. Thereafter, at a meeting of the board in October, 1950, a stock option plan and a profit-sharing plan were adopted and a special meeting of stockholders called for the purpose, among others, of submitting the stock option plan to the stockholders for ratification. A letter was sent to each stockholder giving information concerning both plans. At the special meeting of stockholders thus called, a majority of the stock of the defendant was voted in favor of the stock option plan.

The stock option plan provides that 250,000 shares of the defendant's unissued stock be made subject to options to purchase at the price of $1 per share,[1] to be granted in designated amounts to named executives of the company. Each option to be granted is exercisable at any time within a period of 5 years from the date of issuance but not later than 6 months after the termination of the employment of the executive to whom it is issued. Each is exercisable for either the full number of shares subject to the option or for any part thereof. Each is required to be exercised by the executive to whom it is granted. Each is non-transferrable, except by will. In the event of the death of the optionee, each is inheritable in accordance with the applicable laws of descent.

The profit-sharing plan provides that when the quarterly earnings of the defendant exceed $30,000 before federal income taxes, 10% of any additional quarterly earnings shall be distributed among named officers and executive personnel of the defendant in accordance with a percentage scale. If during any quarterly period earnings should be less than $30,000, then the cumulative deficiency plus any operating loss is to be carried forward to succeeding quarterly periods. The named beneficiaries of the stock option plan are also the named beneficiaries of the profit-sharing plan with substantially the same proportional interest.

Both the stock option plan and the profit-sharing plan were adopted at a meeting of directors held October 24, 1950, at which eight directors were present, of whom five were beneficiaries under the plans. The plaintiffs accordingly attack both plans on the ground that the votes of interested directors were required for their adoption and that, therefore, the action of the board was illegal.

A majority of the stockholders, however, at the before-mentioned special meeting called for that purpose ratified the stock option plan. That ratification cures any voidable defect in the action of the board. *Blish v. Thompson Automatic Arms Corp.*, 30 *Del.Ch.* 538, 64 *A.2d* 581. Stockholders' ratification of voidable

---

[1] The bid and asked quotation for the months of October, November and December indicate that the market price of defendant's stock was approximately $1 but that it rose sharply after December 18 to over $2.

acts of directors is effective for all purposes unless the action of the directors constituted a gift of corporate assets to themselves or was *ultra vires*, illegal, or fraudulent. *Keenan v. Eshleman*, 23 *Del.Ch.* 234, 2 *A.2d* 904, 120 *A.L.R.* 227; *Rogers v. Hill*, 289 *U.S.* 582, 53 *S.Ct.* 731, 77 *L.Ed.* 1385.

There is nothing in the record before us suggesting that the action of the board of directors of the defendant, in adopting the stock option plan, was actually fraudulent or of such illegality as to be absolutely void. The interested character of the directors who voted for the stock option plan makes their action voidable only and thus subject to stockholders' ratification. *Cf. Continental Securities Co. v. Belmont*, 206 *N.Y.* 7, 99 *N.E.* 138, 51 *L.R.A.,(N.S.)*, 112. The attack, therefore, of the plaintiff upon the stock option plan is limited to the question of whether or not it constitutes a gift of corporate assets to executives. If that be the fact, then its defects will not be cured by stockholders' ratification unless such ratification was unanimous.

The validity of a stock option plan under which selected personnel of a corporation may acquire a stock interest in the corporation depends directly upon the existence of consideration to the corporation and the inclusion in the plan of conditions, or the existence of circumstances which may be expected to insure that the contemplated consideration will in fact pass to the corporation. *Rosenthal v. Burry Biscuit Corp.*, 30 *Del.Ch.* 299, 60 *A.2d* 106; *Sandler v. Schenley Industries, Inc.*, 32 *Del.Ch.* 46, 79 *A.2d* 606.

What is sufficient consideration to validate a plan depends upon the facts and circumstances of the particular case. Sufficient consideration to the corporation may be, *inter alia*, the retention of the services of an employee, or the gaining of the services of a new employee, provided there is a reasonable relationship between the value of the services to be rendered by the employee and the value of the options granted as an inducement or compensation. *Wyles v. Campbell, (D.C.)*, 77 *F.Supp.* 343; *McQuillen v. National Cash Register Co., (D.C.)*, 27 *F.Supp.* 639; *Sandler v. Schenley Industries, supra.*

In the case before us, the record demonstrates that Mr. Solo-

mon, one of the beneficiaries of the plan, entered the employ of the company believing that he would be given the opportunity to purchase stock. The same is true with respect to Mr. Robinson. The record also demonstrates that both the directors and Mr. de Saint-Phalle regarded his salary as only partial compensation for his services. While it is not clear with respect to the other beneficiaries of the plan that there was any specific undertaking to afford them compensation through the means of stock options, it may, nevertheless, be fairly assumed from the record that they, as well as Messrs. de Saint-Phalle, Solomon and Robinson, were valued employees whose services had been in the past and were reasonably expected to be in the future valuable to the corporation. We think, however, that in order to dispose of this appeal, we are not required to decide whether, under the record before us, a reasonable relationship of value between such services and the stock options is the fact in this cause.

We think that the stock option plan, as adopted by the directors and as ratified by the majority of the stock, is deficient because it is not reasonably calculated to insure that the defendant will receive the contemplated benefits. The Chancellor recognized that stock option plans adopted by the exercise of proper business judgment[2] and in good faith will not be interfered with by the courts if the provisions of the plan, or the facts and circumstances surrounding it, are such as to reasonably insure that the contemplated benefit will inure to the corporation. The Chancellor found such conditions to be present in this case but we are unable to agree with him.

It would probably unduly limit legitimate corporate action to attempt to lay down a minimum set of prescribed requirements that must be contained in every compensatory stock option plan. The payment of additional compensation by such means is currently fashionable with corporate management. It is probable that it will

[2] Because of the existence of majority stock ratification, the rule that interested directors are entitled to no presumption arising from the good faith exercise of business judgment has no application. See *Lofland v. Cahall, Receiver*, 13 *Del. Ch.* 384, 118 *A.* 1, and *Gottlieb v. Heyden Chemical Corporation*, — *Del.Ch.* —, 90 *A.2d* 660.

continue to be the vogue as long as the present *Section* 130*A* of the *Internal Revenue Code*, 26 *U.S.C.A.* § 130*A*, remains the law. This section provides under certain conditions for the non-taxability as ordinary income of shares acquired by an employee pursuant to options. In view of the different circumstances of each corporation and of the permissible variations in the objects sought to be accomplished by stock option plans, the validity of each plan, of necessity, can be ascertained only after a full consideration, not only of the terms of the plan itself, but of the surrounding facts and circumstances as well. No rule of thumb can be devised to test the sufficiency of the conditions which are urged as insurance that the corporation will receive the contemplated benefit. The most that can be said is that in each case there must be some element which, within reason, can be expected to lead to the desired end. What that element may be can well differ in each case.

In *Holthusen v. Edward G. Budd Mfg. Co., (D.C.)*, 52 *F.Supp.* 125, an option plan was enjoined because the employee was not obligated to remain in the company's employ, nor was the right to exercise the option made dependent upon continued employment. Subsequently, an amended plan requiring the optionee to remain in the company's employ for one year and preventing exercise of the option until one year after issuance was upheld. See *Holthusen v. Edward G. Budd Mfg. Co., (D.C.)*, 53 *F.Supp.* 488, 490. In *Wyles v. Campbell, supra*, an option was upheld upon a finding that the optionee was under an employment contract. In *Wise v. Universal Corp., (D.C.)*, 93 *F.Supp.* 393, an express finding was made that but for the grant of the options the employees would have terminated their services and option was upheld. In *Sandler v. Schenley Industries, Inc., supra*, a contract to purchase the shares in installments over a period of years was upheld in' view of the circumstances that the employee would have ended his employment except for the contract. In *McQuillen v. National Cash Register Co., supra*, an option was upheld which provided for its exercise in installments over a period of years, and which provided that it became null and void upon the ending of the optionee's employment. In *Rosenthal v. Burry Biscuit Corp., supra*, an option was invalidated because there was, *inter alia*, no showing that it was

granted either to induce the optionee to enter the company's employ or to remain in it. In *Clamitz v. Thatcher Mfg. Co.*, (*2 Cir.*), 158 *F.2d* 687, options were sustained which could be exercised only as long as the optionee remained in the company's employ. In each of these cases, there was some element, either in the plan itself or in the surrounding circumstances reasonably calculated to keep the optionee in the corporation's employ. We do not think that it is indispensable to bind the optionee by an employment contract but there must be some circumstance which may reasonably be regarded as sufficient to insure that the corporation will receive that which it desires to obtain by granting the options.

The defendant rests its case upon the argument that the circumstances surrounding the plan before us will insure that the beneficiaries of the plan will remain in the employ of the company and that, thus, the contemplated benefit will inure to the corporation. It points to the fact that the options may be exercised only while the employees remain in the employ of the company. This ignores, however, the fact that the options may be exercised *in toto* immediately upon their issuance and may be exercised within a six months period after the termination of employment. The plan and options issued thereunder, accordingly, do not of themselves insure that the benefit of retaining the services of the employee to whom the option is granted will inure to the corporation, nor is there any showing of surrounding circumstances which would insure the same result.

The defendant also points out that since, under the *Internal Revenue Code*, the favored position with respect to options granted as part of compensation to corporate officials can be obtained only if the options are exercised while in the corporation's employ, the result will be to persuade the optionees to remain in the company's employ. Even if the inferences the defendant seeks to have drawn from this circumstance are justified, they are dependent entirely upon the present state of the federal taxing policy and, as such, too insecure in nature to be regarded as a condition of the stock option plan designed to insure that the corporation will receive the contemplated benefit.

We think, therefore, that the stock option plan before us is deficient in that there are no conditions reasonably insuring that the corporation will receive the contemplated benefit.

We turn now to a consideration of the profit-sharing plan. The plaintiffs attack the profit-sharing plan on three grounds—first, that it was adopted by the board of directors at a time when the defendant was in the process of re-organization in bankruptcy and was not approved by the District Court having jurisdiction of the bankruptcy proceeding; second, that the contemplated payments under the profit-sharing plan bear no reasonable relationship to service rendered or to be rendered, and, third, that it was not adopted by disinterested directors.

We think the first reason urged by the plaintiffs against the profit-sharing plan is without merit. At a time subsequent to the commencement of this action and after payments had been made under the profit-sharing plan, an application was made to the Federal District Court of Delaware seeking to have the defendant held in contempt for adopting the plan and for making payments under it. The District Court held that the defendant was not required to obtain its consent to the adoption of the profit-sharing plan. See *In re California Eastern Airways, Inc., (D.C.),* 97 *F.Supp.* 847.

With respect to the objection of the plaintiffs that the value of the services bears no reasonable relationship to the amounts to be paid under the plan, we cannot say, looking at the scheme of the profit-sharing plan and the amounts to be paid under it on the basis of past and anticipated earnings, that those amounts are so large as, in effect, to amount to spoliation or waste of the corporate assets. In view of the present earnings of the corporation, the amounts to be paid under the plan do not seem shockingly large. There is nothing in the record before us to demonstrate that the persons to whom the amounts will be paid will not render services bearing a reasonable relation to those amounts. *Cf. Rogers v. Hill, supra.*

The plaintiffs' third objection to the profit-sharing plan, to the effect that it was not adopted by disinterested directors, is of more

substance. The fact is that at the directors' meeting of October 24, 1950, at which the profit-sharing plan was adopted, eight directors were present. Of these eight, all of whom voted in favor of the plan, five were designated as beneficiaries of the plan. Only three disinterested directors, therefore, were present at the meeting. Under this circumstance, plaintiffs argue that since it was impossible to obtain a disinterested majority vote of the directors present, the adoption of the profit-sharing plan was illegal and should, therefore, be declared void.

■ It is the general rule that the votes of interested directors of a corporation will not be counted in determining whether proposed action has received the affirmative vote of a majority of the board of directors. *Bovay v. H. M. Byllesby & Co.*, 27 *Del.Ch.* 381, 38 *A.2d* 808, 174 *A.L.R.* 1201; *Italo-Petroleum Corporation of America v. Hannigan*, 1 *Terry* (40 *Del.*) 534, 14 *A.2d* 401. Consequently, the fact that the resolution approving the profit-sharing plan would of necessity have received only three disinterested votes out of a total of eight votes present at the meeting means that the plan failed to receive a legal majority of the directors' votes in its favor.

Defendant argues, however, that the plan did in fact receive a requisite number of disinterested directors' votes by reason of Section 25 of the defendant's by-laws which provides that three directors shall be sufficient to constitute a quorum for the transaction of business, and that a majority vote of directors present at any meeting at which there shall be a quorum shall be the act of the board. So, therefore, argues the defendant, the five interested directors should be disregarded for quorum purposes and, since the plan received the affirmative vote of the three disinterested directors, it was legally adopted by the board. The Chancellor so held.

■ ■ The plaintiffs point out, however, that Section 14 of the defendant's by-laws provides for a board of directors of eleven members, and that *Section 9 of the General Corporation Law, Rev. Code* 1935, § 2041, requires that in no case may a quorum of the board of directors be less than one-third of the total number of

directors. Pointing out that one-third of a board of eleven is four, the plaintiffs argue that the by-law of the defendant providing for a quorum of three is invalid because it contravenes the statute. We think the plaintiffs are correct in this respect, for a by-law which is repugnant to the statute must always give way to the statute's superior authority. *Gaskill v. Gladys Belle Oil Co.*, 16 *Del.Ch.* 289, 146 *A.* 337. Consequently, the result is that while the profit-sharing plan received the affirmative vote of eight directors, that vote did not amount to adoption of the plan because the votes of interested directors were required to be counted in order to obtain a quorum at the meeting.

■ ■ It should be noted that the plaintiffs did not call *Section 9 of the General Corporation Law* to the Chancellor's attention, but argued solely that the presence of interested directors could not be ignored in determining whether the plan received a majority favorable vote at the board's meeting. While the plaintiffs did not urge this precise reason for the illegality of the directors' act upon the Chancellor, they did, however, argue its illegality. We will not permit a litigant to raise in this court for the first time matters not argued below where to do so would be to raise an entirely new theory of his case, but when the argument is merely an additional reason in support of a proposition urged below, there is no acceptable reason why in the interest of a speedy end to litigation the argument should not be considered. We think the point falls within the class of additional reasons supporting the plaintiffs' theory. *Cf. Stephenson v. Commonwealth & Southern Corporation*, 19 *Del.Ch.* 447, 168 *A.* 211 and *Great American Indemnity Co. v. State to the use of Mills*, 32 *Del.Ch.* 88 *A.2d* 426.

■ ■ We hold, therefore, that because the votes of interested directors were required to be counted for quorum purposes at the meeting of October 24, 1950, the profit-sharing plan was not legally adopted, if its legality depends solely on the action of the board. As we have pointed out, however, illegal action of a Board of Directors is absolutely void only when that action is *ultra vires*, a gift of corporate assets to directors, illegal in purpose, or fraudulent. If it does not fall within any of these prohibited classifications the directors' action is voidable only and thus subject to ratifica-

tion by stockholders. *Keenan v. Eshleman, supra; Blish v. Thompson Automatic Arms Corp., supra.* We think the attempted adoption of the profit-sharing plan by the Board is voidable only.

At the time this cause was instituted, the profit-sharing plan had not been submitted for stockholders' ratification but, on October 10, 1951, pursuant to an order of the Chancellor in an action under *Section 31, Rev.Code 1935, § 2063, of the General Corporation Law* seeking to compel the calling of a stockholders' meeting, it was so submitted. At that meeting, a majority of the shares of the defendant were voted in ratification of the action of the directors in adopting the profit-sharing plan. The defendant, therefore, argues that the question of the validity of the adoption of the plan by the directors has now become moot by reason of stockholders' ratification.

The facts concerning the subsequent ratification of the profit-sharing plan by stockholders appear from an affidavit filed in this court subsequent to the institution of this appeal. The plaintiffs object to the implementation of the appeal by means of affidavit and move to dismiss the affidavit.

██ ██ Under some circumstances, facts arising subsequent to the taking of an appeal may be shown to the appellate court for the purpose of having complete justice done, 14 *Am.Jur., Appeal and Error,* § 1156, but we do not think there are sufficient facts before us, assuming it is proper to show the facts by affidavit, to enable us to determine whether or not there has been effective stockholders' ratification of the profit-sharing plan. Necessarily, the effectiveness of such ratification depends upon the type of notice sent to the stockholders and of the explanation to them of the plan itself. We think, however, if there was effective ratification by the stockholders that the profit-sharing plan is valid.

A mandate will, therefore, issue reversing the judgment of the Court of Chancery dismissing the action, and directing the Chancellor:

1. To permanently enjoin the granting of any option or options pursuant to the said stock option plan;

2. To deny the application for an injunction prohibiting the paying or distributing of any money under the said profit-sharing plan if, after such further proceedings as may be required, the Chancellor finds as a fact that the action of the holders of a majority of the defendant's stock at the stockholders' meeting held October 10, 1951, effectively ratified the adoption of said plan by the directors.