Russell McPHAIL, Plaintiff,

v.

The L. S. STARRETT COMPANY, Defendant.

Civ. A. 56-130.

United States District Court
D. Massachusetts.

Dec. 5, 1957.

Sherburne, Powers & Needham, Walter Powers, Boston, Mass., for plaintiff.

Charles B. Rugg, Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

This is an action wherein the plaintiff seeks to enjoin the defendant (hereinafter referred to as the Company) from carrying into effect an Employees' Stock Option Plan (hereinafter referred to as the Plan) on the grounds that it is illegal in certain respects and was not properly adopted. Jurisdiction is based on diversity of citizenship.

### Findings of Fact

The Company, a Massachusetts corporation, has only one class of stock outstanding, common stock without par value. Two hundred thousand shares are authorized of which 150,000 have been issued. McPhail, at all times material to this complaint, owned outright or beneficially at least 20,400 shares. Another 14,251 shares are held in the Company's treasury, most of them reacquired during the past two years in anticipation of the subject Plan. The stock is listed on the New York and Boston Stock Exchanges.

The Plan was approved by the Company's Board of Directors in November, 1955. Its relevant provisions are as follows:

1. The maximum amount of shares to be issued is 20,000 of the authorized, but unissued, shares.

2. All employees with six months service are eligible to participate. This requirement is met by approximately 1,300 employees including six officers or directors.

3. The price of the stock in each instance is to be the fair market value on the day that the thirty-day option to purchase is granted.

4. Payment may be made in installments over a period up to ten years, and can be made by any combination of payroll deductions, cash payments and crediting of dividends paid on shares purchased, but by the end of five years 50 per cent of the purchase price must have been paid from sources other than dividends.

5. Interest will be charged only on overdue payments.

6. Options are exercisable only within 30 days and only by the optionee if he is then in the employ of the defendant.

7. When the optionee signs the purchasing agreement and upon payment of the first installment, he becomes owner of the shares with full voting and dividend rights. He will, however, pledge them with the Company to secure the unpaid balance of the purchase price.

8. Upon termination of his employment, an employee's right to pay for stock in installments ceases.

9. The Plan is to be administered by a Committee of directors ineligible to participate in it. The Committee is to determine, subject to certain salary limitations, the number of shares to be optioned to each eligible employee.

A registration statement relating, inter alia, to the issue of stock under this Plan was filed with the Securities and

Exchange Commission and became effective by order of the Commission dated April 2, 1956. The Plan itself was approved by the Securities Division of the Massachusetts Department of Public Utilities as required by Mass. G.L.(Ter. Ed.) c. 110A, §§ 11 and 11E.

The Plan was submitted to the stockholders of the Company in March, 1956, and 87,297 shares voted in favor of it and 38,758 voted against it.

The plaintiff now asserts that the Plan is illegal in these particulars:

1. The Company would receive no consideration for the options.

2. It would be unconscionable to permit the use of dividends to pay for the stock.

3. The Plan would damage all stockholders by diluting their voting power and dividend rights and because of the cost of operating the Plan.

4. The Plan was not properly adopted by the stockholders by reason of misstatements made to them in the proxy statement and by proxy solicitors engaged by the Company.

5. The carrying out of the Plan would constitute illegal manipulation of the stock by the management to perpetuate its control.

I shall deal with each allegation separately.

1. McPhail argues that the purchase of stock under the Plan involves two separate and distinct contracts, the option and the purchase agreement, that each contract must be supported by some consideration, and that there is no consideration for the option contract. This view has apparently been adopted by Delaware courts which were presented with plans involving long term options at prices considerably below the market and which were granted only to key executives. Kerbs v. California Eastern Airways, Inc., 1952, 33 Del.Ch. 69, 90 A. 2d 652, 34 A.L.R.2d 839, reargument denied 1952, 33 Del.Ch. 174, 91 A.2d 62, 34 A.L.R.2d 839, Rosenthal v. Burry Biscuit Corp., 1948, 30 Del.Ch. 299, 60 A.2d 106.

Technically, an option is nothing more than an offer. Boston & Maine R. v. Bartlett, 3 Cush. 224, 57 Mass. 224. Practically, as well, the options granted under this Plan cannot, in any view, be regarded as anything more than an offer to sell stock. Unlike the options litigated in the Delaware cases, the options in this case are granted to nearly all employees of the Company, are exercisable only by the optionee within the very short period of 30 days, and at the market price. Consequently, they have no market value whatsoever and there is, on these facts, no reason to distinguish between stock options and other types of options which, under Massachusetts law, are merely offers and do not have to be supported by consideration. Boston & Maine R. v. Bartlett, supra.

2. The second allegation that the use of dividends to pay for the stock is illegal and unconscionable is answered simply in terms of the requirements of Massachusetts law, Mass. G.L.(Ter.Ed.) c. 156, §§ 14, 15, 32, and the well settled proposition that dividends on outstanding stock must be paid equally on all stock of the same class. Kehl, Corporate Dividends, 169 (1941 ed.). The Company has outstanding only one class of stock and there are no limitations in the Company's certificate of incorporation, agreement of association, articles of organization, or by-laws with respect to voting or dividend rights of this stock. Furthermore, the Massachusetts Corporation Law specifically permits the issuance of stock to be paid for in installments, § 14 supra, and provides that " * * * every share without par value shall be equal to every other such share."

The Plan provides that an employee becomes the owner of the stock as soon as he exercises his option, but that he must pledge the stock with the Company to secure the unpaid balance of the purchase price. The withholding of dividends from the employee and the application of dividends to the purchase price is merely another security device. Dividends must be paid on these shares and there is no difference legally between

paying this money to an employee directly and paying it to the designated transfer agent to be applied to the employee's benefit.

■ 3. The third objection raised by the plaintiff to the Plan, that it would result in dilution of the voting power and dividend rights of existing shareholders and further damage them because of the cost of operating the Plan, is also without merit. Mass. G.L.(Ter. Ed.) c. 156, § 41 specifically provides that a corporation "by the vote of a majority of all its stock" may increase its stock and may issue shares "without [such shares] being offered to the stockholders." This Plan was approved by a majority of the shareholders. Moreover, the Plan provides for purchase in the open market by the Company of its own stock in order to minimize whatever dilution might result from the Plan. More than half of the total number of shares authorized to be issued under the Plan have already been purchased by the Company and are now held in the form of treasury stock.

■ The annual cost of the Plan, bookkeeping and interest, was outlined to the shareholders by both parties prior to the vote adopting the Plan. That is a sufficient answer to the plaintiff's objection on this point.

■ 4. The plaintiff has failed to sustain his burden of proof with respect to the allegation that the Company made material misrepresentations to stockholders through its proxy solicitors. In fact, no evidence whatsoever was introduced to support this charge.

■ 5. The last objection raised by McPhail is that the Plan was conceived to perpetuate the control of the present management. While the avowed purpose of the Plan was to increase employee incentive, the result unquestionably is to neutralize, at least partially, McPhail's holdings. I am not prepared, however, to find that the Plan was designed solely, or even principally, to achieve this result.

Conclusion of Law

From the foregoing I find and rule that the Employees' Stock Option Plan is legal under the laws of the Commonwealth of Massachusetts and that it was properly adopted by the shareholders. Accordingly, judgment may be entered for the defendant without costs.