BERNARD LIEBERMAN,
Plaintiff,

*vs.*

KOPPERS COMPANY, INC., JOSEPH BECKER, STANLEY N. BROWN, ROBERT H. MCCLINTIC, RICHARD K. MELION, LAWRENCE N. MURRAY, ROBERT S. OELMAN, ARTHUR B. VAN BUSKIRK, W. F. MUNNIKHUYSEN, FRED C. FOY, G. M. WALKER, W. P. ARNOLD, W. C. RUECKEL, FRED DENIG, R. R. HOLMES, B. J. C. VAN DER HOEVEN, H. B. CUMMINGS, D. L. EYNON, G. W. NAYLOR, J. E. SPEARS, E. S. RUFFIN, JR., E. B. SHUCK, E. A. BERRY, M. T. HERREID, W. F. PERKINS, RICHARD S. RHODES, JAMES M. VEEDER, E. R. HALL, P. V. MARTIN, OWEN RICE, PAUL W. BACHMAN, F. L. BYROM, DOUGLAS GRYMES, F. H. FISCHER, E. J. MCGEHEE, RALPH WINSLOW, H. A. DENNY, CARL POTTENGER, FRED RYS, FRANK VARGA, JAMES F. HALEY, P. D. SHOLLAR, C. G. STRANG, J. L. TUNSTEAD, M. S. GRIFFITH, JR., and S. K. DEE,
Defendants.

*New Castle—April 1, 1959.*

*Irving Morris,* Wilmington, Del., and *Milton Paulson,* New York City, for plaintiff.

*James M. Tunnell, Jr.,* and *George T. Coulson* (of Morris, Nichols, Arsht & Tunnell), Wilmington, Del., for answering defendants.

MARVEL, Vice Chancellor: Plaintiff, a stockholder of the defendant corporation, brings this derivative action to have declared invalid a so-called deferred compensation unit plan adopted by management and approved [1] by the stockholders for the stated purpose of enabling the corporation "* * * to attract to and retain in its employment over the years persons of outstanding competence, and to promote the stockholder point of view among key employees of the Company."

The plan, whose consequences parallel to some degree a conventional stock option plan but which contemplates the issuance of units in lieu of options to purchase shares of stock, is administered by a committee consisting of three or more board members declared ineligible to participate in the plan. This committee is not only charged with the duty of construing the plan and selecting participants but also determines the number of units to be reserved for each participant. The plan fixes the total number of authorized units at 100,000 and provides that the aggregate number of units to be awarded to any one participant shall not exceed 5,000, provided that upon discontinuance of a participant's employment units awarded such former employee shall no longer be deemed outstanding.

The value of a so-called unit as of the date of issue is that of one share of common stock on the same date. Such a unit is subject to being increased in value by the crediting to it of dividends paid on a share of stock, and further increased in value under certain conditions by the translation to such unit of the increase in value, if any, of such share of stock between the issue date of a unit and the date for determining a participant's right to such further credit.

1. In a proxy statement of February 7, 1956, preliminary to the meeting which approved the plan, its purpose was further described as follows: "The Deferred Compensation Unit Plan is designed primarily to bind more closely to the Company over a period of years younger key employees whose value to the Company may be expected to increase by awarding them benefits related to dividends paid on and any increase in the market value of the Company's stock. Thus, these younger employees, many of whom are unable, for financial reasons, to make an investment in the Company's stock will nevertheless acquire a personal interest in the Company equivalent in some degree to stock ownership."

Upon the award of units the recipient thereof is credited with an amount equal to the fair market value of an equal number of shares of common stock on the day of the award of such units, and during the life of the plan a ledger account maintained for each employee participating in the plan is thereafter credited with such dividends as he would have received had he actually been a holder of shares equal in number to the units set up in his account. Such credit becomes fixed upon severance of employment because of death or retirement. Upon severance for any other reason payment of such dividend credit must be authorized by the committee after consultation with the president, provided however, if employment is discontinued within five years after joining the plan for any reason other than death or retirement, such dividend credits are payable to such a participant by the committee only under exceptional circumstances.

As in the case of dividend credits the right to a credit of an amount equal to the excess, if any, of the aggregate fair market value on a participant's termination date of that number of shares of common stock equal to the number of units in his account depends on the mode of termination of employment. When employment is terminated for a reason other than death or retirement, payments of increments in the value of units may be made only on authority of the administrative committee after consultation with the president, which may also in such event grant an employee the option of selecting a future value date, as hereinafter described. However, when employment is terminated by reason of death or retirement, a participating employee or his beneficiary shall have the absolute right to have such excess credit determined by taking the fair market value of common stock at a selected value date in lieu of the date of the participant's termination of employment, provided such market value does not exceed the highest price at which a sale of the corporation's common stock was made on the New York Stock Exchange between the date such employee became a participant and his termination date. A three year period for such designation is allowed each participant, and if no date is selected, the valuation date becomes automatically fixed as the third anniversary of the date of an employee's termination of employment.

The plan goes on to provide for payment to a participant or his beneficiary in periodic payments over ten years following the applicable

termination date of the amounts standing to a participant's credit under the plan as a result of dividend payments together with any amounts thereafter credited to him through the creation of an excess in value of units by reason of stock appreciation.

The plan requires that as a condition to the award of units each participant agree to remain in the company's employ for a period of five years from the date of his award or until retirement and to be available for consultation for a ten year period after retirement during which time a participant may not compete with his former employer. While the committee may not take any action affecting a participant's accrued credits, it may at any time prior to a participant's termination date reduce or cancel the number of units standing in his name, and make appropriate unit adjustments in the event of a stock dividend, split-up or the like.

The plan, while generally subject to termination and amendment by the board, may not be amended so as to increase the aggregate number of units which may be awarded under the plan or so as to increase the maximum number of units to be awarded to any one participant except with approval of a majority of the common stock outstanding. The plan concludes with a provision that it shall become operative on such date as shall be fixed by the directors after approval and authorization thereof by the vote of the holders of a majority of the outstanding common stock. An initial reservation by the board of 50,000 shares of authorized but unissued common stock was made by the directors for the purpose of financing the plan, and the stockholders approved it at a March 26, 1956 meeting by a vote of 1,492,517 to 31,083 (there being a total of 1,993,277 shares issued and outstanding). On the same date the board named an independent administrative committee to put the plan into effect.

The complaint alleges that as of December 31, 1957 89,800 units had been awarded under the plan to various employees and that to the extent that the plan provides for awards to participants based on the increased market value of the common stock of the defendant corporation it is invalid for the reason that such awards bear no reasonable relation to the value of services rendered by a participant, and that such awards thus constitute a waste and gift of corporate assets. No

complaint, however, is made concerning the provisions of the plan dealing with dividend credits. It is further alleged that since the adoption of the plan the stock of Koppers has fluctuated widely, that such fluctuations bear little or no relation to the services of participants, and that accordingly the plan is unreasonable and unfair to the corporation and its stockholders and so invalid.

In addition to the enjoining of the operation of the plan the complaint seeks an accounting for all payments made by Koppers under the plan and for general equitable relief, but admittedly those persons who have become eligible for and received payments under the plan by reason of severance of employment are not before the Court, and no accounting is presently sought.

The answer admits the pleaded facts as to the adoption of the plan, sets forth the vote on stockholder approval and concludes that the plan was adopted and given effect by directors of Koppers "* * * in the exercise of their best business judgment as directors and was approved by substantially all of the stockholders who voted thereon in the belief the Plan is a fair, reasonable, appropriate and valid plan in furtherance of the welfare and success of Koppers and for the advantage of all its shareholders." Both plaintiff and the appearing defendants have moved for summary judgment, and this is the ruling of the Court on such motions.

Plaintiff's attack on the plan finds its main support in Judge McNamee's opinion in the case of *Berkwitz v. Humphrey, D.C.N.D. Ohio E.D., 163 F.Supp. 78,* in which a similar plan was struck down insofar as its deferred incentive benefits were attributable to appreciation in the market value of stock. The primary basis for the decision was that such benefits were deemed to bear no reasonable relation to the value of services of unit holders to the corporation. The opinion states that not only did the right granted participants under the plan to select a market value date postdating the termination of their employment disclose an obvious lack of relationship between services and the benefits granted, but that in any event the market value of stock is governed by many factors unrelated to the services of employees. While recognition was given to the fact that earnings are an important if not the most important element in the long range action of corporate

stock, the opinion points out that many general and extraneous factors necessarily influence the stock market. The Court was of the opinion that the capital gains aspect of the plan was premised on a false postulate, namely that an increase in market value of stock is attributable solely to the extra effort made by unit holders in response to the award of units; that the law requires that the amount of a compensary award must reasonably approximate the value of services, and that the plan insofar as it was designed to bestow benefits through a rise in the market value of stock, bore no such relation and might lead to absurd results.

In so deciding, Judge McNamee concluded that the method of compensation contemplated in the plan in effect placed unit holders on a parity with stockholders in respect of capital gains and was per se unreasonable and invalid; that the provision of the plan granting retiring employees the right to defer the selection of a value date was per se unreasonable; that any payment under such provision would constitute a gift and a clear misuse of corporate funds, and finally that the plan was not effectively ratified by the stockholders.

The Court's reasoning was apparently influenced by subsidiary factors such as the apparently speculative nature of the plan, the absence of any limit on the corporation's liability in financing it, the fact that substantial corporate gains affecting the market for the corporation's stock might result solely from the efforts of non-participating top executives, and the existence in the plan of formal consideration in the form of employment contracts (given, as here, in exchange for units), and the fact that a majority of disinterested directors had approved the plan, did not, in the Court's opinion, overcome the plan's deficiencies.

There being no doubt but that the plan here under attack is reasonably calculated to insure the receipt of services by the corporation, it is not subject to the Kerbs ruling (*Kerbs v. California Eastern Airways*, 33 *Del.Ch.* 69, 90 *A.2d* 652, 34 *A.L.R.2d* 839). Furthermore while it is alleged that certain directors are beneficiaries of the plan, no real attack is made nor could such be made on the basis of director self-dealing in view of the existence of an impartial committee and stockholder approval, *Kaufman v. Shoenberg*, 33 *Del.Ch.* 211, 91 *A.2d* 786.

In short, it is my considered opinion that the plan is reasonably and fairly designed to achieve a legitimate business purpose, namely to retain or obtain qualified executive personnel through the medium of deferring compensation until retirement. While a substantial block has been reserved for financing the plan, corporate reserves, if any, may be allocated to the payment of deferred compensation, thereby probably reducing what would have been the stock demands of a comparable stock option plan. Furthermore, while moneys are not paid out by participants for units, there is no reason advanced why a reasonable and impartial committee may not be expected to take this factor into consideration in the award of units, and when need be, in the reduction of units already awarded. Plaintiff also declines to give proper recognition to the dividend credit provision, the most tangible and perhaps the most attractive feature of the plan in the eyes of participants. Finally, the so-called speculative or capital gains features of the plan are by no means absent from conventional option plans and certain types of incentive plans based on earnings, and it would be unrealistic not to recognize that the plan, if fairly operated, will add to job satisfaction and induce added effort on the part of participants with resulting benefits to the corporation, *Kaufman v. Shoenberg, supra.*

Admittedly, the market value of stock of any substantial corporation cannot be isolated from broad economic trends, wars, rumors and many other factors both direct and indirect which affect stock prices, however, earnings are the mark of corporate success and the main factor in stock appreciation, and I do not believe it can be dogmatically said that the services of employees given in response to an incentive plan based in substantial part on the appreciation in the market value of their employer's common stock bear no reasonable relation to such appreciation, and I decline to strike down the plan as per se unreasonable and invalid.

While it may be established in the future that the award of specific units under the plan may in an individual case ultimately pose the threat of payment of illegally excessive compensation, such a case is not now before me.

On notice, an order may be presented granting defendants' motion for summary judgment and denying plaintiff's similar motion.