204 A.2d 83 (1964)
John G. MUNDY, Executor of the Last Will and Testament of Gilbert H. Mandy, and Daisy L. Mundy, Defendants Below, Appellants,
v.
William C. HOLDEN, Plaintiff Below, Appellee.
Supreme Court of Delaware.
October 9, 1964.
*84 Bruce M. Stargatt, Morford, Young & Conaway, Wilmington, for defendants below, appellants.
Schmittinger & Rodriguez, Dover, for plaintiff below, appellee.
WOLCOTT and CAREY, Justices, and STOREY, Judge, sitting.
CAREY, Justice.
This is an appeal from a decree of the Court of Chancery for Kent County directing specific performance of a contract for the sale of a deceased partner's share in the partnership.
In 1945, William C. Holden and Gilbert H. Mundy entered into an informal partnership in Dover, Delaware, as an automobile agency. During subsequent years, the partnership continued to prosper, and the parties, on January 25, 1954, executed a formal written partnership agreement.
After recitals indicating that the partners shared equally in all assets and interests of the partnership, the agreement provided, inter alia:
"As a part of the consideration of this partnership agreement, IT IS MUTUALLY UNDERSTOOD AND AGREED that in the event of the death of one of the partners during the existence of the partnership, the surviving partner does covenant and agree to purchase from the estate of the deceased partner the share or interest of the deceased partner for the sum of Forty Thousand Dollars ($40,000) and to make settlement for the same within three months from the date of death of said partner, and the executor or administrator of the deceased partner is hereby authorized, empowered and directed to consummate said sale and to execute any and all papers necessary to be executed in order to carry out the provisions hereof to transfer and assign all of the right, title and interest of the partner so dying in and to the assets of said partnership, upon condition that the surviving partner shall assume and pay all of the then existing debts and obligations of said partnership. The surviving partner shall continue the operation of said business without interruption."
On April 14, 1959, the parties executed a written modification to the agreement which effected a change in the status of the financial reserves of the partnership but expressly reaffirmed the remaining terms of the original agreement. Following the death of Gilbert H. Mundy on May 31, 1963, William C. Holden, the surviving partner, tendered the sum of $40,000.00 to the Executor of the *85 estate of the deceased partner, Holden having paid or assumed the debts due outside creditors. Tender of this sum was refused upon the ground that it was insufficient and, accordingly, plaintiff brought an action in the Court below seeking to compel an assignment of the interest of the deceased partner to him upon payment of $40,000.00. The Court below, finding no ambiguity in the agreement, granted plaintiff's motion for summary judgment, and defendants have appealed to this Court for review of that decision.
Before this Court, defendants urge that the tender of $40,000.00 was insufficient because they contend that plaintiff was also required to tender the amount of Mundy's share of capital and profits accumulated on the date of his death. In short, defendants urge that such capital investment is an "existing debt and obligation of said partnership" to be assumed and paid by the survivor.
At the outset, plaintiff contends that this argument is not properly before this Court. In the first place, he argues that defendants conceded, in their answer to the complaint, that plaintiff had paid all debts and obligations of the partnership. The answer in fact denies that plaintiff had filed proof of the payment of all obligations. We do not consider that language as an admission of the underlying fact.
Secondly, plaintiff contends that defendants' failure to rebut plaintiff's affidavit, filed in support of his motion for summary judgment which alleges payment of all debts and obligations of the partnership, constitutes an admission of this operative fact. Obviously, the statement in question was predicated upon an attached certificate of a certified public accountant, which clearly indicated that the debts and obligations in question were limited to accounts payable to outside creditors. Accordingly, defendants' silence merely conceded the fact of such payment.
Thirdly, plaintiff urges that the present contention was not properly raised in the lower Court. It is, of course, well-settled that an appellate Court will normally not allow a litigant to pursue an entirely new theory not properly raised below. However, we are of the opinion that the instant case is governed by our decision in Kerbs v. California Eastern Airways, 33 Del.Ch. 69, 90 A.2d 652, 34 A.L.R.2d 839 (1952); reargument denied: 33 Del.Ch. 174, 91 A.2d 62, 34 A.L.R.2d 839 (1952), wherein we stated:
"We will not permit a litigant to raise in this court for the first time matters not argued below where to do so would be to raise an entirely new theory of his case, but when the argument is merely an additional reason in support of a proposition urged below, there is no acceptable reason why in the interest of a speedy end to litigation the argument should not be considered".
These defendants, in the lower Court, urged that the tender of $40,000.00 was insufficient; in fact, the second affirmative defense in their answer avers that part of the retained capital was a separate debt and obligation owing to the deceased partner. We therefore regard defendant's present argument simply as an additional reason in support of the theory argued before the Vice-Chancellor.
Defendants initially contend that a material factual dispute exists, precluding the granting of summary judgment, because the words "debts and obligations" are inherently ambiguous. Specifically, defendants contend that the invested capital of a partner may properly be considered a debt or obligation of the partnership. As stated by the Missouri Court of Appeals:
"It is the general rule that capital furnished by any partner, in the absence of agreement to the contrary, is a debt owing by the firm to the contributing partner, and necessarily is to be *86 repaid him, if the firm assets are sufficient after paying the firm liabilities to outsiders * * *".
Chapin's Estate v. Long, 205 Mo.App. 414, 224 S.W. 1012, 1013 (1920). Accord: T. Harlan & Company v. Bennett, Robbins, and Thomas, 127 Ky. 572, 106 S.W. 287 (1907); Uniform Partnership Act, Sections 18(a), 40(b), 42; T. 6 Del.C.Ch. 15.
But the mere recital of this legal principle does not resolve the question presented by this appeal. The rule set forth in Chapin's Estate and the other authorities cited supra applies only in the absence of an agreement to the contrary. In the instant case, the parties have specifically provided for the manner of dissolution of the firm upon death of one partner and we must consider that entire agreement to determine whether the parties have expressed an intent not to treat capital as a "debt or obligation". See 12 Am.Jur. Contracts, Section 241. The first recitals of the agreement provided that:
"The capital of the partnership shall consist of the present partnership assets including automobile agency, real estate located on South Governors Avenue, Dover, Delaware, improved with garage and repair shop, inventory of parts accessories, supplies, automobiles, new and used, shop machinery and equipment, office furniture, accounts receivable, finance reserves, bank account and farm, together with all income and profits arising from the operation thereof, except such amounts as shall be drawn from time to time from said profits by each partner as compensation.
"IT IS MUTUALLY UNDERSTOOD AND AGREED that the assets of said business and the partnership property shall be owned and held by said partners in equal shares, and the partners shall share equally in the profits and losses that may arise out of the operation of the business of the partnership and likewise shall share equally in the capital assets of the partnership".
Of course, the references in the death provision to the purchase of a "share or interest" for $40,000.00 must be read consistently with the quoted provision of the agreement indicating that each partner's "share" is one-half of the total capital of the partnership. When so read, the agreement is unambiguous and clearly means that the sum of $40,000.00 was intended to be full payment for all of the interests owned by the deceased partner, including his right to demand the return of capital from the partnership. In other words, the parties agreed upon a definite figure and said that this figure is designed to be compensation for all interests in the firm.
Secondly, defendants contend that there are facts and circumstances existing at the time the agreement was made which demonstrate a possible contrary intent, thus precluding the granting of summary judgment. That contention is predicated initially upon the fact that the partnership balance sheet as of December 31, 1953 lists the capital investment upon the liability side of the ledger. Obviously, in preparing the statement, the accountant simply carried investments on the liability side for purposes of achieving balance; the total is carried as "total liabilities and investments", and "liabilities" are listed separate from "investments".
Defendants then contend that since the book value of each party's interest was substantially in excess of the $40,000.00 figure at the time of the agreement, it is unreasonable to presume that the parties would have contracted for a sale of the share of each for $40,000.00. We do not know what the capital shares were when the parties reaffirmed their agreement in April, 1959; the excess was considerably smaller at the time of Mundy's death. In any event, this dissolution provision only applied upon the death of one partner, and *87 neither partner could predict who would survive to enjoy the benefits of these provisions. As stated by the Supreme Court of Pennsylvania:
"Neither could know to whom the option to purchase would fall; and if, during the running of the agreement, because of large additions or reductions, the price might become inequitable, either party had the remedy in his own hands, as without his assent they could not be made". In re Rohrbacher's Estate. 168 Pa. 158, 32 A. 30, 31 (1895).
The decision of the lower Court is affirmed.