GABRIEL MARSHALL v. THE WESTERN NORTH CAROLINA RAIL-
ROAD COMPANY.

## *Corporations—Stockholders.*

1. Where the State is a stockholder in a railroad company, it is bound by the pro-
visions of the charter in the same manner as an individual. It has no advan-
tage as a stockholder on account of its sovereignty, for by becoming such, it
lays aside its character as sovereign, and places itself on a footing of equality
with the individual stockholders.

2. The property of a corporation belongs to it, and not to the stockholders. They
only have an interest in such property through their relation to the company,
and in this respect the State is like any other stockholder. So, where an Act
of the General Assembly provided for a sale of the State's interest in a rail-
road company in which the State was a stockholder, *it was held* to be only a
sale of the stock.

3. Whether such sale would vest in the purchasers of the State's stock all the
powers and privileges which the charter of the company had conferred on the
State ; *quære?*

4. An act of the Legislature which provides that, in a certain contingency, the
stockholders of an existing corporation shall re-organize as a new corpora-
tion, which changes the amount of the capital stock, and provides for the
stockholders in the existing corporation by reserving a certain amount of the
stock for them in the corporation to be formed, creates a new corporation,
and is not an amendment to the charter of the one already in existence. In
such case it is immaterial that the new corporation is called by the same
name as the old one.

5. *Quære* whether the Legislature has power to compel the stockholders in the
old corporation to re-organize as a new company; but if they do so voluntarily,
the new corporation is regularly and legally formed.

6. In such case, the organization of a new corporation at once dissolves the old
one.

7. If there are creditors of the dissolved corporation under these circumstances,
they may cause the property of the defunct corporation to be applied to their
debts by means of a receiver.

(*Young* v. *Rollins*, 85 N. C., 485; *Von Glahn* v. *DeRosset*, 81 N. C., 467; *Railroad
Co.* v. *Rollins*, 82 N. C., 523, and *Dobson* v. *Simonton*, 86 N. C., 492, cited and
approved).

CIVIL ACTION, heard before *MacRae, Judge,* at Spring Term,
1885, of CATAWBA Superior Court. There was a judgment for
the defendant upon the facts agreed to, and the plaintiff appealed.

*Mr. R. Z. Linney* for the plaintiff.
*Mr. D. Schenck* for the defendant.

MERRIMON, J.   The Western North Carolina Railroad Company was organized under and by virtue of an act of the General Assembly (Acts 1876–7, ch. 106), and did business next thereafter until May, 1880.   Its capital stock was $850,000, divided into shares of $100 each.   The State owned of such stock, shares equal to three-fourths thereof, and individual stockholders owned the balance of it.   It owned a valuable railroad and much valuable property appertaining thereto.   It was governed by a Board of Directors, nine of whom were appointed by the Governor of the State with the consent of the Senate, and three of whom were elected by the individual stockholders.

The plaintiff sold and delivered to this company, in the years 1877 and 1878, cross-ties, on account of which it became indebted to him in the sum of $124.30, and this debt has never been paid.

Afterwards, in pursuance of an act of the General Assembly (Acts of the Special Session of 1880, ch. 26), the State sold its stock in, and all its interest in, the franchises and property of every kind of the above-mentioned company, to certain persons mentioned in the second section of that act.

The title and sections of that act, material to a proper understanding of the opinion in this case, are as follows:

"An act to provide for the sale of the State's interest in the Western North Carolina Railroad Company, and for other purposes.

"Section 1.  That the Governor, Treasurer, Secretary of State and Attorney General of the State of North Carolina be and they are hereby appointed commissioners on the part of said State to sell, assign, and transfer all the right and interest of the State in and to the railway, stock, property and franchises of the Western North Carolina Railroad Company, in accordance with the provisions of this act.

"Sec. 2.  That said commissioners are hereby authorized and directed to execute an instrument purporting to convey, and which, when delivered to the grantees in pursuance of the provisions hereinafter contained, shall be a deed effectual to convey

to William J. Best, William R. Grace, James D. Fish and J. Nelson Tappan, subject to the charter of said company and the amendments thereto which shall be in force at the date of the ratification of this act, all the interest of said State in and to the stock, ways, railways, road-bed, right of way, depot grounds, and other lands belonging to the same; all rails, bridges, viaducts, culverts, fences, depot station-houses, engine houses, car houses, wood houses, freight houses, machine shops, and every other building or structure thereunto belonging, held, owned, or used by said railroad company in conducting the business thereof; also, to all locomotives, tenders, cars and other rolling stock, all equipments, machinery, tools, implements, fuel, supplies, and material for constructing and operating the railroad of said company, or any part thereof; together with all and every right, estate, interest, property, claim and demand whatsoever appertaining or in anywise belonging to said railroad company, and all statutory claims or liens of said State against or upon the property and franchises of said company; which said instrument shall be deposited by said commissioners with the United States Trust Company of New York, as an escrow, to be delivered to the grantees therein named, upon the fulfilment of the terms and conditions hereinafter specified, taking from said Trust Company a receipt, setting forth the purpose and conditions of said deposit."

\*        \*        \*        \*        \*        .\*        \*        \*

"Sec. 5. That on or before the depositing of said instrument of conveyance with the said United States Trust Company, said grantees shall deliver to said commissioners a written contract signed by themselves and binding them to said State to pay the interest on said bonds as the same shall accrue, and to finish the railroad of the said Western North Carolina Railroad Company to its Western termini at Paint Rock and the Georgia or Tennessee State line near Ducktown, according to the charter of said company and all acts amendatory thereof, and that said railroad be completed and put in operation to Paint Rock on or before the first day of July, eighteen hundred and eighty-one, and to Mur-

phy, in the county of Cherokee, on or before the first day of January, eighteen hundred and eighty-five, and that the work upon the said road shall be begun within two months from the date of the ratification of this act, and carried on with diligence and energy until completed to Ducktown and Paint Rock."

\* \* \* \* \* \* \* \*

"Sec. 8. That upon the execution and delivery of said contract by said grantees, they shall re-organize the said company as a new corporation by the name of the Western North Carolina Railroad Company, upon the basis of a capital stock of four millions of dollars, which shall be considered and deemed preferred stock; and there shall be set aside and reserved of said stock, for the benefit of the private stockholders of the Western North Carolina Railroad Company, as the same may exist at the date of the ratification of this act, the sum of two hundred and twelve thousand five hundred dollars ($212,500), which stock shall be divided *pro rata* between said private stockholders, according to the number of shares of the stock of the said last-mentioned company respectively held by them; *Provided,* That said company, by a majority vote of the stockholders in interest, may issue second or common stock to an amount not exceeding fifteen thousand dollars per mile of said road; and said company as reorganized shall be governed by a board of nine directors, who shall be elected by a majority vote of the stockholders in interest.

"SEC. 9. That, after its re-organization, said company may execute and deliver mortgage deeds with power of sale to such trustee or trustees as may be selected by the board of directors, conveying the railroad, property and franchise, including road-bed, superstructure, equipment, and all the real and personal estate of said company, to secure the payment of such bonds and the interest thereon as the same shall become due, as it may issue to aid in the construction, completion and equipment of said railroad, and said mortgage deeds, when duly executed, may be recorded in the register's office in Rowan county, and their registration in that county shall be deemed an effectual and sufficient

registration for all purposes, and it shall not be necessary to regis-
ter the same in any other county, any law to the contrary not-
withstanding: *Provided,* that no sale, under the mortgage deeds
herein authorized, shall be made by virtue of any decree of fore-
closure, or of any power of sale contained therein, without giv-
ing ninety days' notice thereof in three newspapers published in
the State of North Carolina."

\*          \*          \*          \*          \*          .          \*          \*          \*

"SEC. 24. That the floating debt of said company, not to
exceed thirty thousand dollars, contracted since the purchase of
the road by the State in eighteen hundred and seventy-five, shall
be paid by the said grantees in cash, and the amount of mortgage
bonds to be delivered to the State as provided in section twelve
of this act shall be reduced by the amount so paid."

A new company styled The Western North Carolina Railroad
Company was organized, under and in pursuance of the eighth
section above set forth of the act last named, on the 27th day of
May, 1880, and this company is the defendant in this action.
This company, upon its organization, took possession of the rail-
road and all property appertaining thereto above mentioned,
and has had possession thereof, using the road as its own,
ever since.   This company has paid $30,000 as required by the
twenty-fourth section above set forth of the act last above men-
tioned; but it had not paid the whole of that sum at the time
this action began.

The deed from the State deposited as an escrow with the Uni-
ted States Trust Company of New York, mentioned in section
two above set forth, was delivered to the assignees of the grantees
therein, in September, 1884, and not until that time.

The plaintiff brought this action before a justice of the peace
of Catawba county against the defendant, the company *last*
above named, on the 4th day of January, 1882, to recover the
money due to him on account of the cross-ties, sold by him to the
company *first* above mentioned, in 1877 and 1878.

The defendant has made no express promise to pay this debt.

Upon this state of facts, the parties agreed to submit the case to the court below, with the further agreement, that if the court should be of opinion that the defendant is liable to the plaintiff, judgment should be entered in his favor for $124.30 and costs—otherwise judgment should be entered for the defendant, with leave to the party cast to appeal. Upon consideration, the court gave judgment for the defendant, the plaintiff excepted, and appealed to this court.

The plaintiff contended that the company which became indebted to him for cross-ties in 1877 and 1878 still exists, and that the defendant is that company, having since then only enlarged or modified its corporate powers, privileges, duties and obligations, the form of its government, and exchanged the State as chief stockholder with peculiar powers, rights and privileges, for individual stockholders with the same or similar rights and privileges, and that, therefore, the defendant is obliged to pay the money so due to him.

On the contrary, the defendant insists that it is not in any respect the company so indebted to the plaintiff, that it is in all respects a new and different company from that, and is on no account or in any manner liable to the plaintiff.

The State was a stockholder in the railroad company organized under the act of 1876–7, ch. 106, and, as such, bound by the provisions of its charter just as were the individual stockholders. It had peculiar privileges and advantages allowed because of its character and the amount of stock it owned, but these it exercised and claimed only as allowed by the charter. It had no advantage as a stockholder in the company because of its sovereignty—this it put off and laid down when it became a stockholder, and, as such placed itself on a footing with the individual stockholders, except in respect to special advantages that may have been secured to it by the terms and provisions of the act incorporating the company. *Curran v. Arkansas*, 15 Howard, 304, and the cases there cited; 2 *Redfield on Railways*, 55, 169. The State had no interest in the company and its railroad, or any

of its property, except as a stockholder. The property of all kinds belonged to the company, not to the stockholders personally; and, as individuals, their interest in the property was only such as they had through their relation to the company as stockholders, and in this respect, the State was on no other or better footing than the individual stockholders.

When, therefore, a stockholder sold his interest in the company, its franchises, its railroad and other property, he sold his stock—only his stock—his right under the charter to vote and have a voice in the company, to share in the dividends it might declare from time to time, and to share in the assets of the company when it should be dissolved, and its affairs wound up and closed.

It seems that it was not contemplated by the charter of the company that the State should sell or otherwise dispose of its stock. No provision in that respect appears, nor is any method or form of transfer of it prescribed, nor are the rights and privileges of purchasers of it defined.

Passing by any question in this respect, and granting that the Legislature could by statute provide for a sale of the State's stock, having due regard for the rights of individual stockholders, it did not, by that act, (ch. 26 of the Acts of the Special Session of 1880) undertake to sell the property of the company. By the terms and purport of this act, the State sold its *interest* in the stock, franchises, and other property of the company, to the persons named in the second section thereof. The first section designates commissioners "to sell, assign, and transfer all the *rights and interest* of the State in and to the railway, stock, property and franchises" of the company. The second section authorizes the commissioners, by a proper instrument in the way and upon the terms and conditions provided, to convey to the person therein named, "*subject to the charter of said company and the amendments thereto* which shall be in force at the ratification of this act, all the interest of said State in and to the stock, way, railways" and other property of the company. The

title to the act describes it as "an act to provide for the sale of the *State's interest*" in the company, "and for other purposes."

The State could not, nor did it undertake to sell more than its interest in the company. It was a stockholder owning three-fourths of the capital stock; this it sold and no more. The purchasers became the owners of the stock—certainly the equitable owners of it—and interested in the property of the company as stockholders and not otherwise. Whether they became stockholders invested with all the exceptional rights and privileges of the State as a stockholder, or whether they became such on an equal footing in all respects with the other individual stockholders, we need not now discuss or decide; because the stockholders of that company—all of them, we must so take it—availed themselves of the authority and right granted in the last cited act to reorganize as a new company.

The eighth section of that act provides, "That upon the execution and delivery of said contract by said grantees, they *shall reorganize the said company as a new corporation*, by the name of the Western North Carolina Railroad Company, upon the basis of a capital stock of four millions of dollars, which shall be considered and deemed preferred stock, and there shall be set aside and reserved of said stock, for the benefit of the private stockholders of the Western North Carolina Railroad Company, as the same may exist at the date of the ratification of this act, the sum of two hundred and twelve thousand five hundred dollars ($212.500), which stock shall be divided *pro rata* between said private stockholders, according to the number of shares of the stock of the said last mentioned company respectively held by them."

It is not necessary to inquire whether or not the Legislature had power to compel the stockholders of the old existing company to reorganize as a new company; or whether the purchaser of the State's stock could compel the other stockholders to join them in such reorganization, because the reorganization of the company "as a new corporation" under the act last mentioned,

was made and took effect on the 27th day of May, 1880, and, at once, the new corporation took possession of the railroad of the old company and has had possession of it ever since that time. Such reorganization must here be taken as implying that it was made regularly and effectually as the law directed, and that all the stockholders of the retiring company assented to it.

The act of the 29th of March, 1880, cited above, obviously contemplated the reorganization of the old company and the creation of a new and independent corporation, invested with new and different corporate franchises, in no way connected with the old one. This Court in referring incidentally to this statute in *Young* v. *Rollins*, 85 N. C., 485, adopted this view of its effect. The purpose was to enable the purchasers of the State's stock, three-fourths of the whole capital stock, to have a clear, large and unembarrassed opportunity to complete the construction of the great lines of railway mentioned and described in the act. To this end, the company was authorized to have an immense capital stock of different kinds and grades, and empowered to create large mortgage debts, and provide methods for securing and paying them, and, differently from the old company, it was to be governed by a board of nine directors to be elected by a majority vote of the stockholders in interest.

The fundamental powers conferred upon the new company, different in most material respects from those of the old one— the chief purpose of the reorganization being clearly such as we have indicated, and the express declaration in the act that the old company shall be reorganized as a "new corporation"—these things leave no doubt upon our minds that the purpose of the Legislature was to create a new and independent corporation, relieved entirely of the old one, its liabilities and embarrassments, if it had any. This view is strengthened by the provision in the twenty-fourth section of the act that required the purchasers of the State's stock to pay off a certain class of the old company's "floating debt, not exceeding thirty thousand dollars." It is likewise supported by the provision that in case the purchasers of

the State's stock should fail to comply with the terms and conditions of their contract with the State, then and in that case, the State should take possession of the railroad and other property, not under the old charter and company, but under new and different powers and provisions specified and defined in the act. *Bollows v. The Bank,* 2 Mason, C. C., 31; *Angell & Ames on Corp.,* 780; *Morawetz on Private Corp.,* sec. 566.

The mere fact that the new corporation was allowed to retain the name of the old one—however much this might tend to mislead uninformed people—cannot be allowed to disappoint the intention of the Legislature so clearly expressed.

Besides, and in addition to what we have said, the act does not purport in terms or effect to enlarge the powers of the old company, or to amend its charter, except that in section 25 certain clauses of its charter are repealed, and this seems to be cautionary merely. It contains no provision—certainly none in terms—that extends to the new company the powers and privileges conferred by the charter of the old one. Section five requires the purchasers of the State's stock to complete the lines of railway mentioned in it as required by that charter, and the general scope and purpose of the new company requires it to do the same thing, and it may be that some of the rights and powers of the old company are by just and reasonable implication conferred upon the new one. In many respects, and largely, the latter company is governed and affected by general principles of law applicable to corporations.

It was properly conceded on the argument, that if the defendant is a new corporation, such as we have indicated it is, the plaintiff cannot recover in this action. It is sometimes difficult to determine whether or not a corporation is a new and independent one, or an old one with new and superadded powers and privileges; but when it is settled that it is a new one, it follows, in the absence of any provision in the statute creating it to that effect, that it is not liable for the debts of the old one. *Angell & Ames on Corp.,* sec. 780; *Morawetz on Private Corporations,* sec. 566.

The reorganization of the old "company as a new corporation," at once had the effect to disorganize and dissolve the old one.   Apart from the legal consequence, it is obvious that the Legislature so intended.   And, likewise, a purpose was manifestly implied, that the old company should transfer its railroad and other property to the new one.   This appears, not from the express terms of the act, but plainly from its scope and purpose, and particularly from the ninth section, which provides in express terms, that the railroad and other property might be mortgaged to secure the mortgage debts allowed to be created. The Legislature authorized such transfer, and it seems that the stockholders of the old and new companies effectuated the transfer of the property as far as they could.   It appears that the new company has had possession of the railroad ever since its organization.

How far the Legislature had power, if any, under that clause of section 1 of Article VIII, of the Constitution in respect to corporations, which provides that "All general laws and special acts passed pursuant to this section, may be altered from time to time, or repealed," to authorize such transfer to the prejudice of the creditors of the old company, we are not now called upon to decide.

The creditors of the old company, however, were not without remedy as to any property of that company liable to be applied to the satisfaction of their debts at the time of its dissolution. Ample remedy in that respect was provided by the statute applicable to such cases.   All the property of the dissolved corporation might have been secured in the hands of a trustee or a receiver, and the right of the creditor to follow the property of the old company in the possession of the new one might have been thoroughly tested and settled.   *The Code*, §§667, 668; *Von Glahn* v. *DeRosset*, 81 N. C., 467; *Railroad Company* v. *Rollins*, 82 N. C., 523; *Dobson* v. *Simonton*, 86 N. C., 492.

Whether or not the plaintiff and other creditors of the old company, if there be any, can yet have such relief as that sug-

gested, is a question not before us and one that we are not now at liberty to decide. This action began before a justice of the peace, and he had no authority to appoint a receiver or grant any equitable relief in a case like this. And, hence, also, the plaintiff could not, in this action, have his debt, as part of the "floating debt," if it be such, paid out of the fund of $30,000 to be paid by the purchaser of the State's stock as provided in section 24 of the act. How and by whom that fund should have been administered is another interesting question not now before us.

There is no error and the judgment must be affirmed.

No error.　　　　　　　　　　　　　　　　　Affirmed.