ALEXANDER WEBB, FOR HIMSELF AND OTHER PERSONS OWNING STOCK IN THE NORTH CAROLINA RAILROAD COMPANY v. JOHN M. MOREHEAD, (PRESIDENT OF THE NORTH CAROLINA RAILROAD, EDWIN S. POU, SECRETARY OF THE NORTH CAROLINA RAILROAD, AND THE NORTH CAROLINA RAILROAD COMPANY.

(Filed 16 December, 1959.)

**1. Corporations § 4—**

G.S. 55-27, (Ch. 2, Public Laws of 1901), prior to the effective date of Ch. 1371, S.L. 1955, prescribed as a matter of public policy that in no case should more than a majority of the shares of stock of a corporation be required to be represented at any meeting in order to constitute a quorum, and this law rendered invalid any by-law of a corporation in conflict therewith, even though such by-law was in effect prior to the passage of the act, since what could be originally prohibited can be subsequently prohibited.

**2. Same: Constitutional Law § 25—**

The fact that G.S. 55-27 renders invalid the prior by-law of a corporation requiring a majority of the privately owned shares of stock to be represented in order to constitute a quorum does not result in the impairment of any contractual right, even in respect to a corporation in which the State owns a majority of the stock, since the shares held by the State have exactly the same rights and no more than any other shares. Further, such by-law being invalid at the time of the enactment of Ch. 1371, S.L. of 1955, it could not be revived by that statute.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Fountain, S. J.,* March 1959 Civil Term, of WAKE.

*Bailey & Bason for plaintiff, appellant.*
*Harley B. Gaston and Willis C. Smith for the North Carolina Railroad Company.*
*Attorney General Seawell and Assistant Attorney General Bruton, amicus curiae.*

RODMAN, J. This action was instituted 2 March 1959, for the purpose of determining the validity of an amendment to the bylaws of defendant North Carolina Railroad Company adopted at a special meeting of the shareholders held on that date. Defendant corporation has a total of 40,000 shares of issued and outstanding stock, 30,002 shares of which are owned by the State of North Carolina, and 9,998 shares by individuals and private corporations. The complaint alleged a special meeting of the shareholders of defendant corporation had been called to consider amendments to its bylaws; that the bylaws in effect when the meeting was called required the presence of a majority of the stock privately held to constitute a quorum; a majority of the stock owned by the individuals was not present at said meeting; the attention of the presiding officer was called to that fact and protest made to the transaction of any business; the action of the majority, in the absence of a quorum, was invalid.

Based on the allegations of the complaint, a temporary restraining order issued prohibiting defendants from acting on the amended bylaw. Defendants moved for a dissolution of the restraining order. By consent the cause was heard on 6 March by Judge Fountain. Evidence was offered by plaintiff and defendants to support their respective contentions as to the validity of the challenged bylaw. No findings of fact were made by Judge Fountain. He dissolved the restraining order. In the statement of the case on appeal the parties agreed that the bylaws were amended by substituting for sec. 4 a new section reading as follows: "A majority of the outstanding stock entitled to vote, represented in person or by proxy, shall constitute a quorum for the transaction of business. If no quorum is present at any meeting, it may be adjourned from time to time until a quorum is present;" that defendant corporation was created pursuant to the provisions of c. 83, Laws of 1848-49.

Prior to the special meeting, Art. I, sec. 4, provided: "Individual stockholders represented, in person or by proxy, and holding not less than the majority of the stock owned by individuals, shall be necessary to constitute a quorum for the transaction of business. If no quorum is present at any meeting, it may be adjourned from time to time until a quorum is present."

Sec. 1 of that article provides for annual meetings on the second Thursday in July.

The court made no finding fixing the date on which the bylaws in existence prior to the special meeting were adopted. There is evidence tending to show adoption in July 1926. There is also evidence tending to show adoption prior to 1900.

The record contains what purports to be copies of minutes of

meetings of stockholders held 12 October 1893 and 12 July 1894. At these meetings it was announced that in the absence of a majority of the stock privately held, no quorum existed and no business could be transacted. The parties, in their briefs and on oral argument, presented the case on the theory that the bylaw requiring a majority of the stock privately owned for a quorum was adopted by the stockholders prior to 1900.

30,300 shares were present at the special meeting. This included the 30,002 shares owned by the State of North Carolina which was represented by proxy. The change in bylaws was approved by a vote of 30,294 shares. Six shares voted against the proposed amendment. We decide the case upon the assumption that the bylaw on which plaintiff relies was adopted prior to 1900.

North Carolina Railroad Company was incorporated pursuant to the provisions of c. LXXXII of the Laws of 1848-49. Sec. 6 of that Act provides the corporation should have power to hold and convey real and personal property, perpetual succession, the right to sue and be sued "and may have and use a common seal, which they may alter and renew at pleasure; and shall have and enjoy all other rights and immunities which other corporate bodies may, and of right do exercise; and may make all such bye-laws, rules and regulations, as are necessary for the government of the corporation, or effecting the object for which it is created, not inconsistent with the Constitution and laws of the United States and of the State of North Carolina." Sec. 9 provides that the affairs of the company shall be managed by a board "to consist of twelve directors, to be elected by the stockholders from among their number at their first and subsequent general annual meetings, as prescribed by section 8th of this Act." Sec. 8 directed the organization meeting to be held at Salisbury for the purpose of electing the directors "and to enact all such regulations and bye-laws as may be necessary for the government of the Corporation and the transaction of its business." This section further declared: "The persons elected directors at this meeting, shall serve such period, not exceeding one year, as the stockholders may direct; and at this meeting, the stockholders shall fix on the day and place or places where the subsequent election of directors shall be held; and such elections shall henceforth be annually made." Sec. 10 gives to each shareholder as many votes as he has shares and provides that directors shall be named by majority vote. Sec. 12 permits the shareholders to provide "by a by-law, as to the number of stockholders and the amount of stock to be held by them, which shall constitute a quorum for transacting business at all subsequent regular or occasional meetings of Stockholders and

Directors." Sec. 24 makes it mandatory that the directors "shall once in every year, at least, make a full report on the state of the company, and its affairs to a general meeting of the stock-holders. . ."

Before action can be taken at a meeting of the shareholders of a private corporation, a quorum must be present.

Sec. 2, c. 26, Rev. Code of 1854, provided: "All corporations may, by their by-laws, where no other provision is specially made, determine the manner of calling and conducting all meetings; the number of members that shall constitute a quorum . . ." Hence both by general statute and charter provision the company was, prior to 1901, empowered without limitation to fix the shares necessary for a quorum. A bylaw duly adopted by the shareholders was valid. 13 Am. Jur. 521.

But such a bylaw could have no validity when it came in direct conflict with the declared public policy of the State of North Carolina. That is true for the reason that in granting the privilege to organize as a corporation and to adopt bylaws, the State, by sec. 6, prohibited a bylaw in conflict with laws of the State.

In 1901 the Legislature enacted "An Act to Revise the Corporation Law of North Carolina." C. 2, P.L. 1901. This Act became effective 1 April 1901. By express language it applies to corporations then in existence as well as those thereafter created. So far as pertinent to this decision, its provisions are codified and brought forward as c. 55 of the General Statutes, 1950 edition. Hereafter, references in this opinion to the General Statutes refer to the 1950 edition. In 1955 the Legislature, by c. 1371, S.L., made major revision of our corporation laws. That Act became effective 1 July 1957 and is hereafter referred to as the 1959 Cumulative Supplement to the General Statutes.

Sec. 12 of the Act of 1901 provided: "All corporations may, by their by-laws, where no other provision is herein made, determine the manner of calling and conducting all meetings; the number of members that shall constitute a quorum: (*Provided,* in no case shall more than a majority of shares or amount of interest be required to be represented at any meeting in order to constitute a quorum; if the quorum shall not be so determined by the corporation, a majority in interest of the stockholders, represented either in person, or by proxy, shall constitute a quorum.)" This provision was in substance codified as Revisal 1146, C.S. 1127, and G.S. 55-27, and remained in effect until 1 July 1957, the effective date of c. 1371, S.L. 1955.

This statutory provision was the rule of the common law. *Hill v. Ponder,* 221 N.C. 58, 19 S.E. 2d 5, where it is said: "It is a fundamental rule of parliamentary procedure, applicable as well to municipal and electing boards, that a majority of the members of a body

consisting of a definite number constitutes a quorum for the trans-action of business (Citations), and it is equally well settled that a majority of the quorum has power to act. (Citation) This rule de-rives from the common law and is of universal application unless modi-fied by statute or some controlling regulation or by-law in the par-ticular instance. (Citations) 'The voice of the majority decides; for the *lex majoris partis* is the law of all councils, elections, etc., where not otherwise expressly provided.' "

The statute, on 1 April 1901, became the declared public policy of the State. Certainly no corporation thereafter created could adopt a valid bylaw which conflicted with this statute.

"A bylaw providing what shall constitute a quorum is invalid if in conflict with the provisions of a statute on the subject, and yields to the statute, as, for example a bylaw providing that a majority of the entire stock is necessary to constitute a quorum, where the sta-tute provides that the election shall be held by such of the stock-holders as may attend for that purpose, without reference to the num-ber of shares they may own." Fletcher, Cyc. Corporations, Vol. 5, p. 82, perm. ed.; *Gentry-Futch Co. v. Gentry,* 106 So. 473; *Benintendi v. Kenton Hotel,* 60 N.E. 2d 829, 159 A.L.R. 280; *Kerbs v. California Eastern Airways,* 90 A. 2d 652, 34 A.L.R. 2d 839; *Lutz v. Webster,* 94 A. 834; *Clausen v. Leary,* 166 A. 623; 18 C.J.S. 605, 13 Am. Jur. 286-7.

It is not within our province to inquire as to the reasons prompting the Legislature to declare that no corporation could adopt a bylaw requiring more than a majority of the stock to constitute a quorum. Plaintiff calls attention to the minutes of the annual meeting of 1894, set out in the record, which had to adjourn for want of a quorum un-der the then existing bylaw. What effect, if any, this may have had on the Legislature of 1901 does not appear. It does, however, suggest the necessity for some provision prohibiting a minority of the stock from preventing stockholders' meetings, thereby perpetuating in office directors elected for a term of one year. Inability to hold a meeting could be used to continue a policy opposed by a majority of the stock.

Unless the statute enacted in 1901 prohibiting a bylaw requiring the presence of more than a majority of the capital stock to consti-tute a quorum is invalid as impairing some contractual right, it is manifest that a quorum was present at the meeting held on 2 March 1959. It is, we think, manifest that the statute enacted in 1901 in no way impaired any contractual rights which private stockholders could assert. What could have been prohibited originally could, by the provisions of sec. 6 of the charter, be subsequently prohibited. Multitudinous decisions have applied the rule to many factual situa-tions. Illustrations may be found in *Erie R. Co. v. Williams,* 233 U.S.

671, 58 L. Ed. 1149, where the State required payment of corporate employees semi-monthly rather than monthly; *Looker v. Maynard,* 179 U.S. 46, 45 L. Ed. 79, *Bridgers v. Staton,* 150 N.C. 216, 63 S.E. 892, cumulative voting by stockholders. At common law the right to vote had to be exercised by the stockholder in person. Proxies were not recognized. *Harvey v. Linville Improvement Co.,* 118 N.C. 693. The common law was abrogated by the statute authorizing stockholders to authorize such voting. Nevertheless, the Legislature in 1901 declared that no proxy should have validity for more than three years after its date. G.S. 55-110. The validity of this provision was recognized and given effect in *Bridges v. Staton, supra.* At common law private corporations were not permitted to utilize their funds for charitable or educational purposes. *A. P. Smith Manufacturing Co. v. Barlow,* 98 A. 2d 581, 39 A.L.R. 2d 1179. By-laws of mutual burial associations providing how the obligation may be discharged may be modified by legislative declaration. *Spearman v. Burial Assn.,* 225 N.C. 185, 33 S.E. 2d 895. Corporate bylaws adopted by stockholders requiring a unanimous vote for the directors, when in conflict with the statutory provision, are void. *Benintendi v. Kenton Hotel, supra.*

The 1901 statute, applicable to all corporations, was a declaration of public policy of the State. No sound reason exists why it should apply to all corporations except the defendant. The mere fact that the State happened to be a stockholder in the corporation neither diminished nor increased the State's rights as a shareholder. The shares of stock held by it have exactly the same rights, no more and no less than any other share. *Marshall v. R.R.,* 92 N.C. 322; *Curran v. The State of Arkansas et al.,* 15 Howard 302, 14 L. Ed. 705. The legislation did not seek to give to the State any right because of its stock ownership.

There was no valid bylaw prescribing a quorum on 1 July 1957 when c. 1371, S.L. 1955, became effective. Hence a majority of the stock constituted a quorum. G.S. 55-27; *Hill v. Ponder, supra.*

Stockholders of a corporation may, by authority given by the Act of 1955, G.S. 55-65 and 66 (1959 Cum. Supp.), fix more than a majority of shares or members of a corporation for a quorum. This power is denied to directors, and cannot be used to prevent the holding of annual meetings. G.S. 55-16 (1959 Cum. Supp.) The authorization so given is a new declaration of public policy. The shareholders of the defendant corporation may use this authority if they do desire. This statutory authorization cannot, however, resurrect a bylaw which was invalidated on 1 April 1901.

The only relief which plaintiff seeks is to enjoin action by the shareholders of defendant company pursuant to the provisions of the

bylaw adopted on 2 March 1959. Since a quorum was, on the conceded facts, present at the meeting, shareholders were authorized to act on such matters as were included in the notice of the meeting; and since invalidity is asserted only because of the invalid bylaw prescribing a quorum, no cause of action is stated.

Action dismissed.

PARKER, J., took no part in the consideration or decision of this case.