

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

December 21, 1965

Honorable J. M. Falkner
Banking Commissioner of Texas
John H. Reagan Building
Austin, Texas 78701

Opinion No. C-573

Re: Where the by-laws of a
depository provide for the
assessment of a charge
against the account of a
shareholder who fails to
increase his share balance
to a minimum of $5.00, and
the assessment of such
charges absorbs such accounts
within 10 months, is the
account subject to escheat,
as a dormant or inactive
account, under Article 3272b,
V.C.S.?

Dear Mr. Falkner:

Your recent letter requesting the opinion of this
office on the above captioned matter reads as follows:

"This Department has before it for further
consideration a standard by-law provision, pre-
viously approved by this Department and in operation
in a slightly different form, by which certain
Depositories, under the supervision of the Depart-
ment of Banking, have been absorbing accounts of
less than five dollars ($5.00).

"Since Article 3272b, V.C.S., has become
generally applicable to such Depositories, the
Department of Banking is not sure whether amounts
so absorbed within ten (10) months are nevertheless
subject to Escheat by the State of Texas.

"In view of the above, your opinion is
respectfully requested to the following question:

"Where each of a class of Depositories,
authorized by State Law, has had standard by-laws
which have provided for levy of charges against
a shareholder for failure, within prescribed periods,

-2769-

to increase his share balance to a minimum of
five dollars ($5.00), as required of each share-
holder by the by-laws and the contract between
the shareholder and the Depository, are such
charges, when made in accordance with the by-laws
and contract in less than one year after the
original payment on the share deposit by the
shareholder, subject to Escheat to the State of
Texas as a 'dormant deposit' or 'inactive account'
under Article 3272b, Revised Civil Statutes of
Texas?"

While your letter is not specific as to the particular
type of depository with which you are concerned, we presume that
such depositories are organized and function pursuant to some
form of corporate charter.

Corporations are privileged to exist and function solely
by virtue of sovereign authority. Having been brought into
being by the State, their rights and powers are prescribed by
the State. Brennan v. Weatherford, 53 Tex. 330 (1880); A. B.
Frank Co. v. Latham, 145 Tex. 30, 193 S.W.2d 671 (1946); Superior
Brewing Co. v. Curtis, 116 S.W.2d 853 (Tex.Civ.App. 1938, no writ
history). The statutes which authorize the creation of corpora-
tions ordinarily provide that they may adopt by-laws for the
purpose of prescribing rules for conducting the affairs of the
corporation. See, for example, Article 342 - 403, Texas Banking
Code of 1943; Article 2466, Vernon's Civil Statutes. However,
by-laws of a corporation must be consonant with the constitution,
statutes and public policy of the sovereign and corporate by-laws
which are in conflict therewith must, to the extent of such conflict,
be held invalid. Staacke v. Routledge, 111 Tex. 489, 241 S.W.
994 (1922); International Travelers' Ass'n v. Francis, 119 Tex.
1, 23 S.W.2d 282 (1930); Kerbs v. California Eastern Airways, 33
Del.Ch. 69, 90 A.2d 652 (1952); Webb v. Morehead, 251 N.C. 394,
111 S.E.2d 586 (1959).

Public policy finds its ultimate expression in the
statutes and constitution of the state. Order of Odd Fellows v.
Jones, 138 Tex. 537, 160 S.W.2d 915 (1942); Gossett v. Hamilton,
133 S.W.2d 297 (Tex.Civ.App. 1939, error dism., judgment correct).
And, within the limitations prescribed by our constitution, it
is the prerogative of the legislature to enunciate, reshape and
change public policy. Scarborough v. Payne, 198 S.W.2d 917
(Tex.Civ.App. 1947, error ref.).

In furtherance of its prerogative the 57th Legislature enacted Article 3272b of Vernon's Civil Statutes and therein provided for the escheat of "dormant deposits" and "inactive accounts" as defined in Section 1(b) of Article 3272b, which provides:

"b.  The terms 'dormant deposits' and 'inactive accounts' mean those demand, savings, or other deposits of money or its equivalent in banking practice, including but not limited to sums due on certified checks, dividends, notes, accrued interest, or other evidences of indebtedness, held by a depository for repayment to the depositor or creditor, or his order, which on or after the effective date of this Article have continuously remained inactive for a period of more than one (1) year without credit or debit whatsoever through the act of the depositor, either in person or through an authorized agent other than the depository itself.  'Dormant deposits' and 'inactive accounts' lose their status as such when a deposit is made by the depositor, or a check is drawn or withdrawal is made therefrom by such depositor, either in person or through an authorized agent other than the depository itself."

It is to those deposits and accounts falling within the scope of this definition that the force of the Statute is directed.  Under this criteria, any action of a depository with respect to a deposit or account is to be disregarded and we must look solely to the ". . .act of the depositor, either in person or through an authorized agent <u>other than the depository itself"</u> to determine whether a deposit or account is dormant or inactive. (Emphasis added).  The contention that an account or deposit never becomes "dormant" or "inactive" if the depository has, pursuant to its by-laws, absorbed such deposit or account in less than one year simply ignores the plain language used by the Legislature in its definition.  In our opinion, the Legislature deliberately drafted this definition so as to specifically preclude the possibility that deposits and accounts could be removed from the operable effect of Article 3272b by a depository which absorbs such accounts through the assessment of service charges, fines, penalties or other charges.  All deposits and accounts remain subject to escheat even though they may have been absorbed by assessments which were levied within the first year of inactivity.

Our conclusion in this regard is supported by the fact that Section 2 of Article 3272b makes it unlawful for any depository to ". . .transfer, convert or reduce any dormant deposit or inactive account to the profits or assets of the depository, either through book transfers, assessments, service charges or any other procedure so long as the deposit or account remains in a dormant or inactive status. . . ."

We wish to make it clearly understood that we do not hold that a by-law such as the one in question is invalid per se, but we do hold that, insofar as the operable effect of the by-law would apply to reduce or absorb deposits or accounts which in the absence of such charges fall within the scope of Article 3272b, such by-law conflicts with public policy and is invalid to this extent. Therefore, you are hereby advised that once a deposit or account, without taking into consideration any service charge, fine or penalty which may have been assessed against it by the depository, becomes dormant or inactive, under the terms of Section 1(b) of Article 3272b, and remains in such status for the period prescribed by said Article, the amount of such deposit or account as of the beginning of the period of inactivity, less any charges specifically authorized under Article 3272b, is subject to escheat. However, if, at any time prior to the delivery of a dormant deposit or inactive account to the State Treasurer, such deposit or account, by reason of the action of the depositor, either in person or through an authorized agent other than the depository itself, ceases to be dormant or inactive, Article 3272b would not preclude the depository from assessing the charge, fine or penalty prescribed by its by-laws.

## S U M M A R Y

Service charges, fines or penalties assessable against a deposit or account under the by-laws of a depository are not to be considered in determining whether a deposit or account is dormant or inactive within the meaning of Section 1(b) of Article 3272b, Vernon's Civil Statutes, and the entire deposit or account, as of the beginning of the period of inactivity, less any charge specifically authorized by Article 3272b, is subject to escheat under such Article. However, should a deposit or account cease to be dormant or inactive by reason of the action of the depositor, either in person

or through an authorized agent other than the depository itself, prior to the delivery of such deposit or account to the State Treasurer, Article 3272b, Vernon's Civil Statutes, would not preclude the levy of the charges prescribed by the by-laws of the depository.

Very truly yours,

WAGGONER CARR
Attorney General

By W. O. Shultz
W. O. Shultz
Assistant

WOS:ml

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Wade Anderson
Roy Johnson
John Pettit

APPROVED FOR THE ATTORNEY GENERAL
By: T. B. Wright