322 F.2d 949
 Nils G. TEREN, Donald C. Ellsworth, Clarence D. Phillips and
Columbia River Paper Co., a corporation, Appellants,
v.
E. A. HOWARD, Jr., and Mary F. Clark, on behalf of
themselves and the stockholders of Columbia River
Paper Co., Appellees.
 No. 18133.
 United States Court of Appeals Ninth Circuit.
 Sept. 4, 1963.
 
 1
 King, Miller, Anderson, Nash & Yerke, Robert S. Miller, Fredric A. Yerke, Jr., and Jean P. Lowman, Portland Or., for appellants Nils G. Teren, donald C. Ellsworth and Clarence D. Phillips.
 
 
 2
 Manley B. Strayer, Cleveland C. Cory, and David G. Hayhurst, Portland, Or., for appellant Columbia River Paper Co.
 
 
 3
 Carey & Epstein, and Henry A. Carey, Jr., Hart, Davidson, Veazie & Hanlon, and Allan Hart, Portland Or., for appellees Howard and Clark.
 
 
 4
 Before POPE and HAMLIN, Circuit Judges, and JAMES M. CARTER, District judge.
 
 
 5
 JAMES M. CARTER, District Judge.
 
 
 6
 This is a stockholder's derivative suit in which the plaintiff stockholders (appellees) sued on behalf of the Columbia River Paper Company, a Delaware corporation, hereinafter termed 'Columbia' and received judgment against certain directors of Columbia.
 
 
 7
 The major question presented is whether or not the evidence is sufficient to support the findings of the trial court. If this question is answered in the affirmative, numerous subsidiary questions arise. There are, inter alia:
 
 
 8
 (1) Is relief barred in whole or in part by a statute of limitations or by laches?
 
 
 9
 (2) Have the appellees lost their standing to defendant this appeal owing to the merger of Columbia into another corporation subsequent to the rendering of the judgment?(3) Are any of the defendant directors entitled to reimbursement of attorneys' fees and costs by the corporation?
 
 THE COMPANY BACKGROUND
 
 10
 The facts of the case are these. In 1926, F. W. Leadbetter organized Columbia as a holding company, to hold the stock of two existing paper mill corporations, Columbia River Paper Mills, hereinafter called 'Mills' and Oregon Pulp and Paper Company, hereinafter called 'Oregon Pulp.' In 1959, the two subsidiary corporations were merged into Columbia, which became the operating company.
 
 
 11
 In 1932, Nils Teren, F. W. Leadbetter's son-in-law was employed by Columbia. F. W. Leadbetter died in 1948, and in September of 1950, Teren took over the office of President. By this time Columbia and its subsidiaries were carrying on a number of diversified operations. From 1950 to the end of 1961, Columbia under Teren's management closed down or sold most of the enterprises controlled by Columbia other than the two paper mills originally operated by Mills and Oregon Pulp. During the same period, Columbia's timber holdings grew to more than a billion feet. These holdings were carried on Columbia's balance sheet at a value of $3,967,000, although their appraised retail value in 1960 was in excess of $36,000,000.
 
 
 12
 Columbia and its related companies had had rough sledding during the 1930's and Teren, while president, caused the company to hold a large reserve of cash, time deposits, and government bonds. The trial court found that at least since 1954, this reserve was never less than $10,000,000.
 
 
 13
 From 1954 on, Columbia's seven-man board of directors consisted of Teren; Mrs. Caroline Leadbetter, F. W. Leadbetter's widow; Pittock Leadbetter, the founder's son; Henry Andreae, his grandson; Donald C. Ellsworth, a vicepresident and Secretary of the corporation; Clarence D. Phillips, general counsel for Columbia; and Dr. Herbert C. Lieser, an 80 year old retired physician who had been on the board since 1938. The affairs of the corporation were carried on by an executive committee, composed of Teren, Andreae, Phillips, and since 1959, Ellsworth.
 
 
 14
 During the years 1956 through 1962, the period involved in this litigation, the Leadbetter family owned or controlled about 60% Of Columbia's outstanding common stock, with the remaining 40% Publicly held by approximately 350 stockholders. After a futile demand on the corporation to bring suit against the defendants, one of the minority stockholders[1] instituted the present derivative action to obtain relief from numerous alleged irregularities in the operation of the company.
 
 Activities Complained Of
 
 15
 In the court below, the plaintiffs attacked the reasonableness of salaries paid to several of Columbia's officers, but the trial court found excessive salary paid only to Teren. The plaintiffs successfully attacked certain stock options which were granted to Teren and Ellsworth, as well as deferred compensation agreements entered into between these two defendants and the corporation.[2]
 
 
 16
 During his tenure as president, Teren's salary increased from $31,740 annually to $96,000. The trial court concluded that the increases in Teren's salary were wholly unauthorized, and could be sustained only if intrinsically fair and reasonable. All amounts over $72,000 annually for the years 1956 to 1962 were found to be unfair, unreasonable and excessive, and Teren was ordered to refund these amounts, with interest, to the corporation.
 
 
 17
 Teren and Ellsworth were granted options to buy 700 and 150 shares, respectively, of Columbia stock at $725. The market price at that time was about $760, but this price did not reflect the true value of Columbia's assets, owing to the low figure for timberlands carried on the company's balance sheet, and the optioned stock was found by the trial court to be worth $1500 to $2000 per share.
 
 
 18
 The trial court concluded that the stock options were invalid because they were not authorized by the action of disinterested directors exercising independent business judgment, they were not supported by consideration, and they could not be upheld as intrinsically fair and reasonable.
 
 
 19
 Although there was in existence a retirement plan under which Teren or his wife would receive $12,000 a year for life, Columbia entered into a deferred compensation agreement with Teren. The plan provided that upon his retirement, Columbia pay annually $48,000 (one-half of the average of his last three years' salaries) to him for life, and if his wife survived him, $36,000 to the wife for life or until remarriage. An unusual provision of the agreement was that should Teren's employment be terminated because of a sale or merger of Columbia, the payment provisions would go into effect immediately as if he had retired.
 
 
 20
 Like agreements but with different amounts, were entered into with Ellsworth, Pittock Leadbetter, Andreae,[3] and six non-officer employees.
 
 
 21
 The trial court held the agreements with Teren and Ellsworth invalid because they were not the result of the exercise of independent business judgment by disinterested directors, they were unreasonable and excessive, and they constituted a waste of corporate assets.
 
 Sufficiency of the Evidence
 
 22
 The trial judge made one finding of fact which was not directly attacked by the appellants. This was that Teren 'dominated and controlled Columbia's Board, and has managed its affairs and used its funds without enabling or permitting said Board to carry out its responsibilities and duties owed to the Company's stockholders. The members of said Board (other than defendant Teren) have knowingly acquiesced in his said domination and control.' As the trial judge commented on the record: 'Teren's domination of the other directors and his ability to impose his will upon the other directors was the key to this whole law suit.'
 
 
 23
 The appellants, to prevail, must show that the evidence fails to support this finding, since if it is allowed to stand, it effectively disposes of the major issues of the case.
 
 
 24
 Rule 52(a) of the Federal Rules of Civil Procedure requires that on appeal 'findings of fact shall not be set aside unless clearly erroneous * * *'. If conflicting inferences may be drawn from the established facts by reasonable men, an appellate court cannot substitute its own judgment for that of the trial court. Lundgren v. Freeman (9 Cir. 1962), 307 F.2d 104, 113.
 
 
 25
 A reading of the record discloses evidence which is more than sufficient to support the finding of domination and control of the board by Teren. Among other things, the record shows three of the other six directors were related to Teren by marriage; the incompetence of Pittock Leadbetter as a corporate officer; Mrs. Leadbetter's advanced age and dependence on her son-in-law in business matters; Dr. Lieser's age; and the general dependence on Teren's goodwill of Andreae, Pittock Leadbetter and Ellsworth for their employment, and of Phillips for Columbia's legal business and his position as general counsel. The finding of domination and control by Teren is not clearly erroneous, and it must stand.
 
 
 26
 This case was tried on the assumption that Delaware law was controlling on the substantive issues. Under the law of that state, directors of a corporation are not allowed to profit by a breach of their duty to the corporation and its stockholders. The leading case of Guth v. Loft, Inc., (1939), 23 Del.Ch. 255, 270, 5 A.2d 503, 510, states the rule as follows:
 
 
 27
 'Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders.'
 
 
 28
 A more recent case standing for the same proposition is Gottlieb v. McKee, (1954), 34 Del.Ch. 537, 107 A.2d 240.
 
 
 29
 A constructive trust in favor of the corporation may be impressed on the profits improperly made by the directors, Guth v. Loft, supra, and contracts improperly entered into may be voided by stockholders, Kerbs v. California Eastern Airways, Inc., (1952), 33 Del.Ch. 69, 90 A.2d 652, 34 A.L.R.2d 839.
 
 
 30
 That the defendant directors violated their trust is clear. They breached their fiduciary duty to Columbia and its stockholders by permitting officers of the company to waste corporate assets. Teren and Ellsworth actively participated in transactions tainted with self-interest, while the remaining directors acquiesced therein. Therefore, any salary paid to Teren which was unreasonable in amount must be repaid to the company; the deferred compensation plans, if unreasonable or for improper purposes, cancelled; and the profits realized from the stock option, unless reasonable and otherwise proper, returned in full.
 
 
 31
 The appellants contend that the recovery by Columbia on the stock options should be limited to an amount equal to the difference paid by Teren and Ellsworth for the options, and the market value on the date the options were exercised. This would defeat the purpose of the constructive trust imposed on the profits from this transaction and would leave the two directors with a large profit gained from their breach of trust, since Columbia stock more than doubled in price after the options were exercised.
 
 
 32
 In addition, the trial judge found that both Teren and Ellsworth were at all material times aware of the fact that the balance sheet of the corporation did not reflect the true value of its assets, and at the times of granting and exercising the options, both men knew that the stock was worth between $1500 and $2000 per share, more than twice the price they paid for the stock.
 
 
 33
 We turn now to the reasonableness of Teren's salary[4] the validity and reasonableness of the stock option plans and deferred compensation agreements.
 
 
 34
 A trial court has a difficult task in trying to place an exact value on the worth of the services of an officer to his corporation. Many imponderables enter into such an evaluation. In the present case, the court below was forced to make a determination and, on the record, we cannot say that he abused his discretion in settling on $72,000 as the amount above which any additional compensation by way of salary to Teren was unreasonable. By the same token, and on much the same evidence, the trial judge was free to find the deferred compensation plans and stock options excessive and unreasonable in amount; that a dominant reason for the granting of the deferred compensation agreements and stock options to Teren and Ellsworth was to provide for them in case of the sale of the company; and that Teren and Ellsworth had insider knowledge of the true value of the optioned stock.
 
 
 35
 No lengthy discussion of the evidence which supports, or reasonably could support, the inferences drawn by the trial judge is required; suffice it to say that the record could well support the inferences actually drawn and the trial judge, with the invaluable opportunity to observe the witnesses and determine their credibility, made his decision and, as his findings of fact are not clearly erroneous, they must stand.
 
 Laches and Statutes of Limitation
 
 36
 The appellants argue that appellees are barred from recovery, at least in part, by the Oregon statute of limitations or, in the alternative, by laches.
 
 
 37
 Taking the latter point first, there is no indication that appellees delayed bringing this suit for such an unreasonable time as to cause a court of equity to refuse to grant them relief. The claim of laches is to be decided on the particular circumstances of each case. Kelly v. Tracy, (1956),209 Or. 153, 305 P.2d 411. A perusal of the minutes of either the executive committee meetings or of the board meeetings would not have revealed the increases in salary complained of, since these were not recorded in any formal fashion. It is too much of a burden to place upon a stockholder the necessity of digging through the company files to locate withholding forms, social security reports, employment record cards, and the like in order to determine the salaries paid to the company officers. As to the stock options and deferred compensation agreements, it is hard enough for a stockholder of any unlisted company to obtain information about these items, and the management of Columbia was unusually reticent about them. True, the stock options were approved by the stockholders, but the optionees were not. As found by the trial judge, the recipients of the options were known at the time of the stockholders meeting, but this information was not relayed to the stockholders before their approval of the plan. Later, the stockholders were told that options for 900 shares had been granted, but there was still no disclosure of the beneficiaries. Nor did this information appear in Columbia's annual reports. The same was true of the deferred compensation plans.
 
 
 38
 The suit for cancellation of the deferred compensation agreements is clearly equitable in nature. Hibernia Bank v. McElligott, (1934), 147 Or. 387, 34 P.2d 652. Although there may be some question of concurrent equity and law jurisdiction with respect to the salary payments to Teren and the stock options, the causes of action are not barred by the statute of limitation of Oregon.
 
 
 39
 Appellants contend that the two year statute, ORS 12.110, is controlling:
 
 
 40
 'An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; * * *.'
 
 
 41
 ORS 12.080(4) provides: 'An action for taking, detaining or injuring personal property, including an action for the specific recovery thereof; shall be commenced within six years.' This subsection was analyzed in Deetz v. Cobbs & Mitchell Co., (1927), 120 Or. 600, 253 P. 542, wherein the court said:
 
 
 42
 'Any actionable act, other than a personal injury, or the breach of a contract, whereby the owner of personal property is deprived of the benefit of it or the property is damaged or destroyed, is an injury to personal property. * * *
 
 
 43
 'The purpose of section 6, subd. 4, OrL. (ORS 12.080(4)) was to include all actions for torts involving personal property.'
 
 
 44
 By the phrase 'other than personal injury' the court is referring to ORS 12.110 with its 2 year period; and by the phrase 'or the breach of a contract' the court is referring to ORS 12.080(1) which contains a 6 year period.
 
 
 45
 ORS 12.140 the catch all statute for any cause 'not otherwise provided for' has a 10 year period.
 
 
 46
 We think it clear that ORS 12.110 with its 2 year period applies to torts to a person and that ORS 12.080(4) with a 6 year period applies in this case.
 
 
 47
 The appellees' recovery was limited to salary paid and options granted within a six year period before the complaint was filed, and relief is not barred.
 
 
 48
 Since the acts or omissions of the other directors which make them liable secondarily for the repayment of benefits received by Teren and Ellsworth took place within six years before suit was filed, such liability is neither barred by laches nor by a statute of limitations.
 
 Secondary Liability
 
 49
 Appellant Phillips argues that there was error in charging him with secondary liability for the repayment of Teren's excess salary and the dividend payments made to Teren and Ellsworth with respect to the optioned stock. His argument, however, is predicated on the assumption that Teren and Ellsworth are not primarily liable for these amounts; since we have determined that they are so liable, this contention fails.
 
 Loss of Capacity by Merger
 
 50
 The appellant Phillips argues that owing to the merger of Columbia with the Boise Cascade Paper Corporation, the appellees no longer have the capacity to contest this action on appeal.
 
 
 51
 This court denied a 'Motion to Reverse and To Remand with Instructions to Dismiss' based on the identical argument, by order dated October 23, 1962. There is no indication that the reason for denial was the belief that the motion was premature, as suggested by appellant Phillips; to the contrary, the pertinent facts relating to the merger and any resultant change in legal status were the same then as they are today. The question of capacity is thus foreclosed.
 
 
 52
 A few additional comments are in order. These defendants are not alleged to have misconducted themselves, they have been adjudged to have done so. No matter what the state of the law as to the effect of a merger or sale before judgment in cases such as this, directors and officers cannot by merger or sale of their corporation be allowed in such fashion, to escape from a liability already adjudged, based on their prior acts and conduct.
 
 
 53
 The result of a decision in favor of appellants on this point would be to allow them to escape liability for, and retain the fruits of their misconduct[5] by the simple expedient of selling the company.
 
 
 54
 It is also claimed that an affirmation of this decision would result in a windfall for the Boise Cascade Paper Corporation. Columbia was merged into Boise three weeks after the entry of judgment. It is not unreasonable to presume that the so-called windfall was bargained for by Boise when it set its offering price for Columbia stock. Although the price was set before judgment was rendered, there was no way of ascertaining with certainty whether or not the offer was based in part on the contingency of the appellees' victory in this law suit. That the judgment has affected the price of at least some Columbia stock is shown by the fact that Boise made a post-judgment increase in its offer of about $60 per share to all non-selling stockholders.
 
 
 55
 Assuming, then, that the price of all Columbia stock included the valuation of the law suit, whether before or after judgment, the ones who benefited were the shareholders of Columbia, the ones for whom this suit was brought.
 
 Reimbursement of Litigation Costs
 
 56
 The appellants Ellsworth and Phillips argue that they are entitled to reimbursement from Columbia for expenses incurred by them in their successful defense against the repayment of excessive salary by Ellsworth, Andreae and Pittock Leadbetter. The board passed a resolution on March 19, 1962, authorizing the payment by Columbia of all litigation costs incurred by the defendants, pursuant to Delaware General Corporation Law, 122(10). This section gives a corporation the power to so indemnify its directors and officers in suits such as this
 
 
 57
 'except in relation to matters as to which any such director or officer * * * shall be adjudged * * * to be liable for negligence or misconduct in the performance of duty.'
 
 
 58
 We have earlier upheld the finding that the directors did not use independent business judgment in dealing with company problems. Just as Teren's salary increases were invalid, so were the increases enjoyed by the other defendants. Whether or not 122(10) allows an authorization for the company to pay expenses as was passed here, (one month before the trial of the suit), the present case falls within the exception provided for in the statute. The increases were invalid because of the misconduct of the defendant directors; that the trial court failed to find them to be excessive and unreasonable is of no comfort to the defendants because this finding in no way validates the increases, it merely allows them to be sustained on the theory of quantum meruit. The defendants are entitled to no reimbursement from the company.
 
 THE APPEAL OF COLUMBIA
 
 59
 Columbia has appealed only from that portion of the judgment awarding attorneys' fees and expenses to appellees.
 
 Columbia's brief states:
 
 60
 'The purpose of Columbia's appeal is to protect its interests in the event of a reversal or modification of the judgment in favor of the company. In this event, the award of appellees' attorneys' fees and expenses to be paid by the company could not stand.
 
 
 61
 'However, as stated below, Columbia strongly supports the trial court's judgment and believes it should be affirmed in every respect.'
 
 
 62
 This statement disposes of Columbia's appeal. Finding no error, the judgment is affirmed.
 
 
 
 [1]
 The other plaintiff, Mary F. Clark, was added as a party plaintiff some months later
 
 
 [2]
 Defendants Pittock Leadbetter and Andreae were also parties to deferred compensation agreements, but cancelled their participation voluntarily when this suit was brought
 
 
 [3]
 See footnote 2
 
 
 [4]
 All parties agreed that the directors were entitled to reasonable compensation for their services even though their salaries were not properly authorized. See Hall v. John S. Isaacs & Sons Farms, (1958), 37 Del.Ch. 530, 146 A.2d 602, aff. 163 A.2d 288 (Sup.Ct.Del.)
 
 
 [5]
 The appellants also argue that Boise Cascade Paper Corporation is barred from taking part in this suit because it was not a shareholder at the time of the acts complained of