104 F.3d 258
 20 Employee Benefits Cas. 2321, 96 Cal. Daily
Op. Serv. 9461,
96 Daily Journal D.A.R. 15,545,
Pens. Plan Guide (CCH) P 23930U
JOSEPH ROSENBAUM, M.D., INC., Defined Benefit Pension Plan;
Joseph Rosenbaum, as Administrator and Trustee of
the Joseph Rosenbaum, M.D., Inc.,
Defined Benefit Pension Plan,
Plaintiffs-Appellants,
v.
HARTFORD FIRE INSURANCE COMPANY, Defendant-Appellee.
 No. 94-55579.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 13, 1995.
Decided Dec. 27, 1996.
 
 Michael A. Vanic, Reish & Luftman, Los Angeles, CA, for plaintiffs-appellants.
 David T. DiBiase, Anderson, McPharlin & Conners, Los Angeles, CA, for defendant-appellee.
 Appeal from the United States District Court for the Central District of California, Irving Hill, District Judge, Presiding. D.C. No. CV-93-02733-IH.
 Before: HUG, Chief Judge, BEEZER, and KLEINFELD, Circuit Judges.
 KLEINFELD, Circuit Judge:
 
 
 1
 This case deals with the scope of an employee dishonesty bond issued to an Employment Retirement Income Security Act (ERISA) plan. The district court granted summary judgment on the grounds that there was a concealment that would void the coverage. We affirm, but on different grounds.
 
 FACTS
 
 2
 Dr. Joseph Rosenbaum established a pension plan for his professional corporation, naming his wife and himself as trustees. He and a firm called California Pension Administrators and Consultants, Inc., were administrators of the plan. Evidently, California Pension Administrators and Consultants only managed the paperwork. The authority to manage and invest the plan's money resided with Dr. and Mrs. Rosenbaum as trustees.
 
 
 3
 During the time periods relevant to this case, Dr. Rosenbaum caused some hundreds of thousands of dollars of plan money to be invested in second mortgages in California residential real estate. More precisely, the money was invested through Property Mortgage Company, Inc., managed by a man named Stanley Glickman, in fractional shares of second deeds of trust. The investment scheme called for Mr. Glickman to assign to investors fractional shares of notes and deeds of trust held by Property Mortgage Company, and guarantee payments to the investors, even if the debtors on the notes defaulted.
 
 
 4
 Dr. Rosenbaum developed a social relationship and a business relationship of trust with Mr. Glickman after receiving very high yields for a number of years. He states in his affidavit that he eventually trusted Mr. Glickman's judgment to the point that he "made no independent inquiry or evaluation" and "exercised no independent judgment in regard to the investments." When Mr. Glickman would recommend a purchase, Dr. Rosenbaum would simply send Property Mortgage Company a check and power of attorney, giving the Company authority to purchase and control an interest in a note and deed of trust. When the underlying debt was paid off, Mr. Glickman would automatically place the proceeds in a separately numbered account, pending reinvestment in another trust deed-at least that is what was supposed to happen. Two ways for Dr. Rosenbaum to lose money in this plan would be the inability of Property Mortgage to pay on its guarantees if its debtors defaulted, and misuse of cash held by Property Mortgage Company for investors pending rollover into new deeds of trust after old ones were paid off.
 
 
 5
 In 1991, Property Mortgage Company failed. Dr. Rosenbaum filed evidence in opposition to the motion for summary judgment suggesting that the failed company had engaged in fraud. Dr. Rosenbaum's theory is that the cause of the failure was not merely the collapse of California's inflated real estate market. He claims that Property Mortgage Company looted the cash accounts and ran a Ponzi scheme to cover the guarantees and defalcations. His evidence suggests that Mr. Glickman was paying off old investors with new investors' money, and commingled investors' money with company money, using it freely instead of reinvesting it. The truth of these averments has not been tested, so we intimate no judgment as to whether Mr. Glickman or Property Mortgage Company were dishonest. We assume without deciding, for purposes of summary judgment analysis, that Dr. Rosenbaum's ERISA plan lost money because of Mr. Glickman's dishonesty.
 
 
 6
 This lawsuit is Dr. Rosenbaum's attempt to shift the loss from his ERISA plan to the insurer which wrote his employee dishonesty bond. His theory is that Mr. Glickman is a person whose dishonesty was covered by the bond. The district court granted summary judgment in favor of the bonding company, and we affirm.
 
 
 7
 Hartford Fire Insurance Company issued the employee dishonesty bond. It promises to pay for loss resulting from employee dishonesty, and, as supplemented by an ERISA endorsement, defines "employee" more broadly than common law employees:
 
 EMPLOYEE DISHONESTY COVERAGE FORM
 A. Coverage
 
 8
 1. We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss.
 
 
 9
 2. Covered Cause of Loss: "Employee Dishonesty."
 
 
 10
 . . . . .
 
 
 11
 D. Additional Exclusions, Conditions and Definitions
 
 3. Additional Definitions
 
 12
 a. "Employee Dishonesty" in paragraph A.2. means only dishonest acts committed by an "employee," whether identified or not, acting alone or in collusion with other persons, except you or a partner....
 
 
 13
 . . . . .
 
 CRIME GENERAL PROVISIONS
 C. GENERAL DEFINITIONS
 1. "Employee" means:
 
 14
 a. Any natural person:
 
 
 15
 (1) While in your service (and for 30 days after termination of service); and(2) Whom you compensate directly by salary, wages or commissions; and
 
 
 16
 (3) Whom you have the right to direct and control while performing services for you; or
 
 
 17
 b. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the "premises."
 
 But "employee" does not mean any:
 
 18
 (1) Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or
 
 
 19
 (2) Director or trustee except while performing acts coming within the scope of the usual duties of an employee.
 
 
 20
 The Hartford policy included an endorsement labeled "Welfare and Pension Plan ERISA Compliance." This endorsement broadens the definition of employee:
 
 
 21
 In compliance with certain provisions of the Employee Retirement Income Security Act (ERISA):
 
 
 22
 1. "Employee" also includes any natural person who is:
 
 
 23
 a. A trustee, an officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor, of any Employee Welfare or Pension Benefit Plan (hereafter called Plan) insured under this insurance, and
 
 
 24
 b. Your director or trustee while that person is handling funds or other property of any Plan insured under this insurance.
 
 ANALYSIS
 
 25
 We review summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). The district court decided this case on a different theory from the one we use, but the issues discussed below are briefed, and we are free to affirm on any basis supported by the record. Wallis v. Simplot Co., 26 F.3d 885, 888 (9th Cir.1994).
 
 
 26
 I. Coverage.
 
 
 27
 Dr. Rosenbaum's theory of coverage is that Hartford sold him a bond covering anyone who had to be bonded under ERISA, Mr. Glickman fell within that class, so the bond covered him. To reach this conclusion under the language of the policy, he argues that Mr. Glickman was a trustee, so was covered by the extension of the definition of "employee" in the ERISA compliance endorsement to "any natural person who is a trustee."
 
 
 28
 Dr. Rosenbaum provided evidence in opposition to summary judgment that Mr. Glickman was a fiduciary who had to be bonded under ERISA. This raises three questions: (1) whether Mr. Glickman was a fiduciary; (2) whether a fiduciary is covered under the coverage for trustees under the Hartford bond; and (3) whether the requirement that Mr. Glickman be bonded implies that Hartford's bond covered him.
 
 
 29
 A. Fiduciary.
 
 
 30
 "Fiduciary" is defined functionally in ERISA, see 29 U.S.C. § 1002(21)(a), and includes those who render investment advice for a fee under certain circumstances. 29 C.F.R. § 2510.3-21(c); Thomas, Head & Greisen Employees Trust v. Buster, 24 F.3d 1114, 1117 (9th Cir.1994). We conclude that Dr. Rosenbaum established a genuine issue of fact as to whether Mr. Glickman was a fiduciary under Thomas, Head & Griesen. A reasonable finder of fact could conclude from the evidence submitted by Dr. Rosenbaum that, pursuant to a mutual understanding, Mr. Glickman provided individualized investment advice on a regular basis, that the advice consisted of recommendations as to the advisability of investing in second deeds of trust, that it was given in exchange for a fee, and that Mr. Glickman did not merely sell deed of trust notes to Dr. Rosenbaum's pension plan. This would satisfy the factors in Thomas, Head & Greisen. Id. at 1117-18.
 
 
 31
 B. Applicability of trustee coverage.
 
 
 32
 A determination that Mr. Glickman functioned as a fiduciary would not establish coverage under the bond. The bond does not say that it covers fiduciaries, just trustees and certain others:
 
 
 33
 "Employee" also includes any natural person who is:
 
 
 34
 a. A trustee, an officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor, of any Employee Welfare or Pension Benefit Plan (hereafter called Plan) insured under this insurance....
 
 
 35
 (emphasis added). Dr. Rosenbaum's plan expressly designates the trustees: his wife and himself:
 
 
 36
 e. TRUSTEE.
 
 18. The trustee shall be (check one box):
 CALPAC, Inc.'s master trust
 
 37
 ----
 
 
 38
 XX June Rosenbaum and Joseph Rosenbaum, M.D.
 
 
 39
 ---- (named individual(s) or holding institution with
 
 
 40
 trust powers).
 
 
 41
 June Rosenbaum and Joseph Rosenbaum, M.D. are the trustees covered by the bond because they are the only trustees the ERISA plan had. Mr. Glickman was not designated at any time as a trustee for Dr. Rosenbaum's plan.
 
 
 42
 Dr. Rosenbaum's argument depends on the premise that the terms "fiduciary" and "trustee" are synonymous. They are not. All trustees are fiduciaries, see Restatement (Second) of Trusts § 170 Comment (a) (1958), but not all fiduciaries are trustees. See 29 U.S.C. § 1103 (providing that a trustee shall be appointed by a named fiduciary); 29 U.S.C. § 1002(14)(A) (defining "party of interest" as "any fiduciary (including, but not limited to, any ... trustee ... )"); 29 U.S.C. § 1002(21)(A) (defining "fiduciary" in broad functional terms). A director of a corporation is a fiduciary, but ordinarily not a trustee. Teren v. Howard, 322 F.2d 949, 953 (9th Cir.1963) ("While technically not trustees, [corporate officers and directors] stand in a fiduciary relationship to the corporation and its stockholders."). Likewise, agents generally have fiduciary responsibilities toward their principals, regardless of whether they are trustees. Restatement (Second) of Agency § 13 (1958). A trustee is a person who holds some res in trust for a beneficiary. Restatement (Second) of Trusts § 3 (1959). The class of fiduciaries is much more inclusive than the class of trustees, and the bond did not purport to cover all fiduciaries. There is nothing ambiguous about the term trustee, and it cannot be read to embrace all fiduciaries. Though Dr. Rosenbaum established a genuine issue of fact as to whether Mr. Glickman was a fiduciary, he did not establish a genuine issue of fact as to whether Mr. Glickman was a trustee.
 
 
 43
 C. Bonding requirement.
 
 
 44
 Dr. Rosenbaum's argument includes an alternative coverage theory that because Mr. Glickman was required to be bonded, and the Hartford bond was designed to cover anyone who was required to be bonded, it covered Mr. Glickman. Assuming without deciding that Mr. Glickman was required to be bonded, we nevertheless conclude that this bond did not cover him.
 
 
 45
 We assume without deciding that Mr. Glickman had to be bonded, as a fiduciary, under 29 U.S.C. § 1112(a). ERISA fiduciaries and fund handlers must, with some exceptions, be bonded:
 
 
 46
 (a) Requisite bonding of plan officials. Every fiduciary of an employee benefit plan and every person who handles funds or other property of such a plan (hereafter in this section referred to as a "plan official") shall be bonded as provided in this section;....
 
 
 47
 Such bond shall provide protection to the plan against loss by reason of acts of fraud or dishonesty on the part of the plan official, directly or through connivance with others.
 
 
 48
 But the Hartford policy does not say that it provides all bonding of any kind required by ERISA. It says that the additional coverage of employees is "in compliance with certain provisions of" ERISA. (emphasis added). Hartford's ERISA compliance endorsement does not bond everyone who must be bonded. It bonds only those classes of persons it designates.
 
 
 49
 This is so even if others must be bonded under 8 U.S.C. § 1112(a). Dr. Rosenbaum correctly points out that the regulations interpreting § 1112 require the bonding of persons who, though independent contractors, perform functions normally performed by plan employees.
 
 
 50
 For purposes of the bonding provisions, the terms "administrator, officer, or employee" shall include any persons performing functions for the plan normally performed by administrators, officers, or employees of a plan. As such, the terms shall include persons indirectly employed, or otherwise delegated, to perform such work for the plan, such as pension consultants and planners, and attorneys who perform "handling" functions within the meaning of § 2580.412-6. On the other hand, the terms would not include those brokers or independent contractors who have contracted for the performance of functions which are not ordinarily carried out by the administrators, officers, or employees of a plan, such as securities brokers who purchase and sell securities or armored motor vehicle companies.
 
 
 51
 29 C.F.R. § 2580.412-3(d). We assume without deciding that Mr. Glickman was like a planner and handler, yet not like a securities broker, and therefore had to be bonded. The regulations say that such independent contractors may be bonded by including them in the form or in an "agents rider":
 
 
 52
 Bonding, to the extent required, of persons indirectly employed, or otherwise delegated, to perform functions for the plan which are normally performed by "administrators, officers, or employees" as described in § 2580.412-3(d) may be accomplished either by including them under individual or schedule bonds or other forms of bonds meeting the requirements of the Act, or naming them in what is known under general trade usages as an "Agents Rider" attached to a Blanket Bond.
 
 
 53
 29 C.F.R. § 2580.412-10(d)(2). Dr. Rosenbaum's bond does not include persons such as Mr. Glickman, and he did not obtain an "agents rider."
 
 
 54
 The statute does not require that any bond be construed to cover all persons required to be bonded. It requires plan officials who receive, handle, disperse or exercise custody of plan money to be bonded. 29 U.S.C. § 1112(b) ("It shall be unlawful for any plan official to whom subsection (a) applies, to receive, handle, disburse, or otherwise exercise custody or control of any of the funds or other property of any employee benefit plan without being bonded...."). The statute also prohibits plan officials from permitting any official who has not met the bonding requirements to receive, handle, disperse or control plan funds. Id. If Mr. Glickman had to be bonded, then perhaps the Rosenbaums as trustees should not have invested the ERISA plan's money with Property Mortgage Company without ascertaining whether he was. They perhaps could have insured the plan against the risk that he might not be bonded as required by buying an "agents rider" or coverage including persons in his position. The Rosenbaums could have invested their ERISA plan's money in a manner not requiring bonding, as by buying securities through a stockbroker. That they invested instead with Property Mortgage Company does not imply that their bond on Dr. Rosenbaum's employees, trustees et al. covered Property Mortgage Company's employees.
 
 
 55
 II. State law claims.
 
 
 56
 Dr. Rosenbaum alleged several state law claims against Hartford. The claims he argues on appeal are breach of the implied covenant of good faith, fraud, and false or misleading advertising. Basically, he says that Hartford quit investigating Mr. Glickman's alleged fraud once it ascertained that he was not covered, and that it represented the bond as complying with ERISA when it did not. Hartford argues that these claims are barred by ERISA preemption. We need not decide whether the claims are preempted and therefore barred, because even if they are not, Dr. Rosenbaum did not establish any genuine issue of material fact on his state law claims.
 
 
 57
 Dr. Rosenbaum submitted no evidence to show any breach of Hartford's duty to investigate. An insurance company has a duty to make an appropriate investigation into a claim, giving as much consideration to the insured's interests as its own. Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 169 Cal.Rptr. 691, 695, 620 P.2d 141, 146 (1979). If, as Hartford concluded and we agree, Mr. Glickman was not covered, then as to this claim, there was no insurance coverage and no further duty to investigate the details of Mr. Glickman's alleged wrongdoing.
 
 
 58
 Dr. Rosenbaum's other state law claims all are predicated on the factual proposition that Hartford falsely said its policy would cover anyone who needed to be bonded under ERISA. But the only representation he points to is the policy language. He does not claim that some promotional literature or other statement outside the policy made this representation. The policy does not say that it covers anyone who needs to be bonded. Thus there was no misrepresentation to which a fraud, misrepresentation, or false advertising claim could be based.
 
 CONCLUSION
 
 59
 The Hartford bond did not cover Mr. Glickman, so summary judgment in favor of Hartford was correct.
 
 
 60
 AFFIRMED.